**SCOTT AND FETZER COMPANY (the Kirby Company Division), Plaintiff-Appellee,**

v.

**Virgil L. DILE, Individually and Virgil L. Dile and Barbara Jolene Dile, husband and wife, dba Railroad Freight, Railroad Salvage and Discount Freight; and T.H.E. California Corporation, an Arizona Corporation, dba Railroad Freight, Defendants-Appellants.**

Nos. 79–3314, 79–3740.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 1981.

Decided April 27, 1981.

David N. Ramras, Phoenix, Ariz., for Dile.

Barry L. Springel, Cleveland, Ohio, on brief; Irving Berger, Jones, Day, Reavis & Pogue, Cleveland, Ohio, argued, for Scott & Fetzer Co.

Before CHOY and REINHARDT, Circuit Judges, and KELLEHER,* District Judge.

CHOY, Circuit Judge:

This is a consolidated appeal from a preliminary injunction issued by the United States District Court and from a subsequent order finding appellant Virgil Dile in civil contempt. We reverse the issuance of the injunction, vacate the contempt judgment and ·remand for further proceedings.

I. *Facts*

Appellee Scott and Fetzer Company, the Kirby Company Division ("Kirby"), is engaged in the business of manufacturing and

---

* The Honorable Robert J. Kelleher, United States District Judge for the Central District of California, sitting by designation.

distributing electric vacuum cleaners and parts and accessories therefor. Appellant Virgil L. Dile ("Dile"), a resident of the State of Arizona has been engaged since 1965 or 1966, in the retail sale of various consumer products, both individually and through corporations owned or controlled by him. He has done business under various trade names.

Kirby sells its products to "authorized factory distributors" pursuant to written agreements which include a license to use Kirby's trademarks. Although there appears to be some dispute as to whether Dile was ever a factory authorized distributor of Kirby, he was not so authorized at all times relevant in this action.

Over the years Kirby has had written commitments with purchasers of vacuum cleaners to completely rebuild vacuum cleaners sold to them for a specified maximum fee, on condition that only the original purchasers request the rebuilding. It is not the company's policy to rebuild and sell any used Kirby vacuum cleaners.

Dile has been engaged in the retail sale of rebuilt vacuum cleaners bearing Kirby's trademark since 1971 or 1972.[1] This case arose from Dile's sale of these rebuilts and specifically from his advertising in connection with such sales.

Kirby brought suit against Dile alleging trademark infringement and unfair competition. The district court held a show cause hearing on March 21 and 22, 1979 on Kirby's request for a preliminary injunction.

On April 13, 1979, the district court entered a preliminary injunction, part 3 of which required Dile to include in any advertising which used the word "Kirby" (a registered trademark owned by Kirby) a disclaimer of any affiliation with Kirby.[2] Dile appealed from the preliminary injunction.

On May 9, 1979, Kirby filed a motion in the district court to hold Dile in contempt for violating the disclaimer injunction. Kirby requested that as partial relief for the violation the district court bar any use of the word "Kirby" in Dile's advertising. The district court issued an order to show cause and held a hearing on the contempt motion on May 31, 1979.

On July 12, 1979, the district court entered an order in which it (a) held Dile in civil contempt, (b) ordered Dile to pay the expenses incurred by Kirby in the contempt proceeding, (c) ordered Dile to pay a fine of $500, and (d) ordered the cessation of all use of the word "Kirby" in any manner whatsoever in Dile's advertising.

On August 3, 1979, Dile filed a motion that the district court reconsider the July 12 order with respect to the contempt finding, the $500 fine, and the non-use injunction. On October 10, 1979, after reconsideration, the district court entered an order (a) affirming the contempt finding, (b) striking the $500 civil contempt fine, and (c) denying Dile's request to strike the non-use injunction. On November 8, 1979, Dile filed a notice of appeal from the October 10 order.[3] On January 17, 1980, this court consolidated

---

1. Dile does not rebuild the Kirby vacuum cleaners himself but rather purchases rebuilt Kirby vacuum cleaners from the Palomar Vacuums Company.

2. Paragraph 3 of the preliminary injunction provides:

    3. Defendant shall include in any advertisement and/or commercial which uses the word "Kirby" or depicts a Kirby Product, either orally, visually and/or in writing, a statement in clearly legible and/or audible form that the seller "is not affiliated or connected with, or authorized by, the manufacturer of the Kirby vacuum cleaner to sell or service that product." If the word "Kirby" is used orally, then the aforesaid statement shall be oral. If the word "Kirby" is written,

then the aforesaid statement shall be written in the same type, style and size as that used for the word "Kirby." If a Kirby Product is depicted, then the aforesaid statement shall be prominently written. With respect to television commercials, if the aforesaid statement is required to be in writing it shall remain continuously visible on the screen without any accompanying written material for no less than three (3) seconds.

3. On November 26, 1979, Kirby moved this court for a dismissal of the November 8 appeal on the ground that the court lacked jurisdiction since Dile failed to file a timely notice of appeal from the July 12 order. On January 9, 1980, the court denied the dismissal motion.

this appeal with the appeal from the original preliminary injunction.[4]

## II. *Appeal from the Preliminary Injunction*

### A. *Order to Show Cause Hearing*

This action was commenced on March 18, 1978. The order to show cause hearing on Kirby's request for a preliminary injunction was not held until March 21, 1979. During this period of more than one year, extensive discovery took place.

At the order to show cause hearing Kirby called 23 witnesses in support of its claim. Twenty of the 23 witnesses were not listed as witnesses by Kirby in its answers to interrogatories. All 20 were permitted to testify over Dile's objection. In addition, of the 16 persons listed by Kirby as witnesses in the answers to interrogatories, Kirby called only three to testify at the hearing.

One of the undisclosed witnesses was an expert witness, John Lackner, a Kirby plant manager. His testimony concerned a Kirby rebuilt that was sold by Dile to an investigator hired by Kirby. He testified that a substantial number of components of the rebuilt were not genuine Kirby parts and as to the safety hazards posed by the examined machine. He was allowed to testify despite the fact that his name was not listed in response to an interrogatory which expressly asked whether any experts had been retained by Kirby. Two of the 20 witnesses not listed were process servers. Their testimony was not used by Kirby as part of its case in chief. One witness was the private investigator hired by Kirby. Other witnesses included persons who had purchased rebuilt Kirby vacuum cleaners from Dile believing them to be new Kirby products.

Kirby also offered 51 exhibits in support of its claim. Twenty-six of the 51 exhibits were not listed as exhibits in Kirby's answers to interrogatories. All of the exhibits were received over Dile's objection.

Dile argues that the district court abused its discretion by permitting Kirby, over objection to call the 20 witnesses to testify at trial and to introduce the 26 exhibits when notice of their identity and intention to use them was first given after trial began and when the witnesses and exhibits were not listed in response to interrogatories. We agree. These actions by the district judge denied Dile his right to prepare effective cross-examination and to present rebuttal witnesses and exhibits. We note that the need for preparation for effective cross-examination is even more compelling where expert testimony is involved.

In addition it appears that Kirby used these undisclosed witnesses and exhibits to support a previously undisclosed theory of the case. Kirby's theory of the case, as shown in its answers to interrogatories, was that Dile committed trademark infringement and unfair competition by using the trademark "Kirby" in his advertising and by making various alleged misleading representations in his advertising and sales receipts. At the hearing Kirby first revealed a new theory of the case; that is, that Dile allegedly engaged in trademark infringement and unfair competition by retaining the trademark "Kirby" on the rebuilt vacuum cleaners where such rebuilt vacuum cleaners were not assembled in their entirety by Kirby with "genuine" Kirby parts (manufactured by or for Kirby). In addition, at the hearing Kirby first raised an issue concerning the quality of Dile's rebuilt Kirby vacuums apparently arguing that Dile's rebuilt Kirby vacuums were inferior to Kirby's new vacuums and, thus, by retaining the "Kirby" trademark on such rebuilt vacuums Dile was injuring Kirby's good name and reputation.

The Supreme Court has noted that

---

4. Our jurisdiction over the appeal from the order granting the preliminary injunction is found in 28 U.S.C. § 1338(a), as to trademark infringements, and 28 U.S.C. § 1338(b) as to the unfair competition claims since they are joined with substantial and related claims under the Trademark Laws of the United States. The court has jurisdiction over the appeal from the order refusing to modify the injunction, under 28 U.S.C. § 1292(a)(1).

Rules 26 to 37, the discovery-deposition provisions of the Federal Rules, were intended to insure "proper litigation", *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947), by making the "trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed. 1077 (1958).

*Goldman v. Checker Taxi Co.*, 325 F.2d 853, 855 (7th Cir. 1963). Rule 26(e) of the Federal Rules of Civil Procedure specifically requires supplementation of responses to interrogatories. The rule states in relevant part:

(e) Supplementation of Responses. A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (A) the identity and location of persons having knowledge of discoverable matters, and (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

Kirby explains its failure to supplement by maintaining that it was not until shortly before the March order to show cause hearing that it discovered the trademark infringement and unfair competition associated with the rebuilt vacuums. By a letter to Dile's counsel dated March 8, 1979 (which was read into the record), Kirby offered to supplement its prior interrogatory answers to identify the witnesses and exhibits it intended to use at trial. Since Kirby had made a request for supplementation to Dile, Kirby's offer to supplement was predicated on a simultaneous supplementation.[5] Dile never responded to this letter and Kirby claims that if he had he would have received the information that disclosed Kirby's position with respect to the rebuilts. This letter indicated nothing about a new theory in the case, however, and furthermore Rule 26(e) of the Federal Rules of Civil Procedure does not require such a simultaneous supplementation of answers to interrogatories.

While the district court has wide discretion concerning discovery and evidentiary issues at trials and hearings, this discretion is not limitless.

A rule of thumb as to the meaning of the abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."

---

5. The letter, dated March 8, 1979, read as follows:

David N. Ramras, Esq.
1110 East McDowell Road
Phoenix, Arizona 85006
  Re: *The Scott & Fetzer Company v. Virgil Dile*
Dear Mr. Ramras:
  As you may recall, we each propounded interrogatories concerning the witnesses to be presented at the show cause hearing and the subject matter of their expected testimony. We are prepared at the present time to supplement our responses in that regard. However, in view of the fact that identical directions for supplementation were in our respective interrogatories, we are entitled to the same information from you. Therefore, we believe that the appropriate procedure is for supplemental answers to be exchanged simultaneously. Please advise me in writing at your earliest convenience as to whether you are prepared to exchange such supplementations, and if you are, the time at which you propose to make the exchange.
  You may also recall that we each propounded interrogatories concerning the exhibits to be introduced at the show cause hearing. We are still in the process of determining what exhibits we intend to proffer and are willing to make the same type of exchange as set forth above when we complete our determination.
                Very truly yours,
                Barry L. Springel
cc: G. Mark Cord, Esq.

*Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir. 1976).

We find that, considering all the factors and circumstances of this case, the district court's actions constituted an abuse of discretion.

### B. *Dile's Deposition*

A dispute arose between the parties over the deposition of Kenneth A. Hook, Kirby's in-house counsel, and over Kirby's noticing of a second deposition of Dile. Dile failed to appear for the deposition and the district court held him in contempt and precluded him from testifying at the order to show cause hearing as a punishment for contempt pursuant to Rule 37 of the Federal Rules of Civil Procedure. Dile contends that this order constituted an abuse of the district court's discretion. Our holding on the previous issue makes it unnecessary to review this order.

### III. *Appeal from Contempt Finding and Order Modifying the Injunction*

### A. *Modification of Injunction*

Due to our reversal of the order granting the preliminary injunction, it is unnecessary for us to reach the issues concerning the order modifying the injunction. Since the injunction itself has been invalidated, the modification also falls.

### B. *Contempt Judgment*

■ The district court found Dile to be in civil contempt. Contrary to the general rule regarding criminal contempt,[6] a civil contempt judgment may fall if the underlying injunction is invalidated.[7] The Supreme Court stated in *United States v. United Mine Workers,* 330 U.S. 258, 295, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947), that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued."

Several other circuits have held specifically that a civil contempt judgment is invalidated if the underlying injunction is determined to be invalid.[8] These courts have distinguished between "coercive" civil contempt and "remedial" civil contempt in their analysis, but have come to the conclusion that neither can survive the invalidation of the underlying injunction.

■ The order finding Dile in contempt was clearly "civil" contempt. Kirby asked that Dile be held in *criminal* contempt but the court specifically refused to so hold. In addition, it appears that the contempt order is of the "remedial" nature as its purpose was to compensate Kirby for the costs incurred in the contempt hearing (the court originally fined Dile $500 but, on Dile's request to reconsider, changed the order to require a $500 fine upon the *next* violation). The contempt judgment is for remedial purposes and, therefore, must fall as a result of our decision invalidating the underlying injunction. *See United States v. United Mine Workers, supra,* at 295, 67 S.Ct. at 696.

### IV. *Conclusion*

Under all the facts and circumstances of this case, we find that the district court abused its discretion in allowing Kirby to introduce at the hearing the undisclosed

---

6. "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal ...." *United States v. United Mine Workers,* 330 U.S. 258, 294, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947).

7. The most significant difference between criminal and civil contempt concerns the purpose and character of the sanction that is imposed in each. The purpose of criminal contempt is to vindicate the authority of the court, and the order is punitive. In contrast, the objective of a civil contempt decree is to benefit the complainant and the sanction imposed is remedial. *Gompers v. Bucks Stove and Range Co.,* 221

U.S. 418, 441–42, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911).

8. *Smith v. Sullivan,* 611 F.2d 1050, 1054 (5th Cir. 1980); *Blocksom and Co. v. Marshall,* 582 F.2d 1122, 1124 (7th Cir. 1978) (civil contempt may be defended on the ground that the underlying order was erroneously issued); *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1356 (5th Cir. 1978) (an order of civil contempt cannot stand if the underlying order on which it is based is invalid); *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1342–45 (3d Cir. 1976).

witnesses and exhibits and to use a new theory of the case. The granting of the preliminary injunction is REVERSED, the contempt judgment is VACATED, and the case is REMANDED for further proceedings.