O’MALLEY, Circuit Judge,
dissenting.
I agree that, once this Court affirmed the PTO’s cancellation of claim 26 of the '683 patent, an ongoing injunction barring infringement of that patent could no longer stand and must be vacated prospectively. That conclusion comes easily; as the majority notes, even Appellant’s counsel conceded the point during oral argument. Maj. Op. at 1356. The more difficult question is whether Appellees are relieved of all penalties for having violated the injunction during the four years it was in place before the PTO’s cancellation was affirmed.[1]
On this second question, the majority concludes that “[t]his case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions,” Maj. Op. at 1359, because, under Fresenius USA, Inc. v. Baxter International, Inc., 721 F.3d 1330 (Fed.Cir.2013) (“Fresenius II”), cancellation of claims by the Patent and Trademark Office (“PTO”) “requires that non-final judgments be set aside.” Maj. Op. at 1359. Because it finds the judgment in this case nonfinal, the majority — on the strength of Fresenius II — renders all aspects of the earlier judgment against Lawson, including the injunction premised thereon, a nullity. I respectfully dissent from that aspect of the majority’s opinion because Fresenius II is distinguishable from, and I do not believe governs, the present appeal. I write separately, moreover, to note that, if we are bound by Fresenius II on these facts, I find Fresenius II even more troubling than I initially believed. Fresenius USA Inc. v. Baxter Int’l, Inc., 733 F.3d 1369, 1373-81 (Fed.Cir.2013) (O’Malley, J., dissenting from denial of petition for rehearing en banc).
I
In Fresenius II, a panel of this court held that “cancellation of claims during reexamination would be binding in concurrent litigation,” and, while “cancellation of a patent’s claims cannot be used to reopen a final damages judgment ending a suit based on those claims,” there can be “no final judgment binding the parties” “where the scope of relief remains to be determined.” 721 F.3d at 1339, 1341 (emphasis added). The facts here are different than those before us in Fresenius II.
In the initial district court litigation between Fresenius and Baxter, Fresenius brought suit seeking a declaratory judgment that the claims of three patents were “invalid and not infringed by Fresenius’s hemodialysis machines.” Fresenius USA Inc. v. Baxter Int’l., Inc., 582 F.3d 1288, 1293 (Fed.Cir.2009) (“Fresenius I ”). The district court granted Baxter judgment as a matter of law, finding that the jury’s obviousness verdict was not supported by substantial evidence. Id. After a separate jury trial on damages, the jury awarded Baxter over $14 million in pre-verdict damages. Id. at 1294. The district court issued a permanent injunction against Fre- *1362 senius, but delayed implementation of the injunction to allow Fresenius time to develop a non-infringing machine. Id. In lieu of the immediate injunction, the district court ordered Fresenius to pay an ongoing royalty for any infringing machines sold prior to the injunction taking effect. Id. Fresenius appealed the district court’s grant of judgment as a matter of law regarding validity, the permanent injunction, the ongoing royalty award, and claim construction. Id. Fresenius, however, did not appeal the pre-verdict damages award, only the prospective royalties and injunction.
In Fresenius I, we reversed the district court’s grant of judgment as a matter of law for all but six claims of one of Baxter’s patents. Id. at 1304. For those six claims, we held that Fresenius failed to prove invalidity. Id. We remanded to the district court with the following instruction: “[W]e vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26-31 of the 434 patent remain valid and infringed. Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion.” Id.
On remand, Fresenius argued that no injunction should issue, the post-verdict ongoing royalty amount was unreasonable, and it should receive a “new trial for pre-verdict damages for infringement of the '434 patent.” Fresenius II, 721 F.3d at 1333. The district court declined to enter an injunction as the relevant patent had expired, awarded Baxter new post-verdict damages at a reduced royalty, and denied Fresenius’s motion for a new preverdict damages trial. Id. While Fresenius’s second appeal was pending, we affirmed a decision of the PTO cancelling the remaining claims of the '434 patent in an ex parte reexamination proceeding. In re Baxter Int’l, Inc., 678 F.3d 1357, 1366 (Fed.Cir.2012). The Fresenius II panel concluded that, because we vacated the injunction and the royalty award, and remanded for “further proceedings consistent with this opinion” in Fresenius I, 582 F.3d at 1304, the litigation was not final as we left the district court with more to do than simply “execute the judgment.” Fresenius II, 721 F.3d at 1341. Because the “scope of relief remained] to be determined,” there was “no final judgment binding the parties,” the reexamination “extinguishe[d] the underlying basis for suits based on the patent,” and we vacated the pre-verdict damages award. Id. at 1341, 1344.
The facts of the present appeal differ markedly from those presented in Fresenius II. At trial in this case, the jury found that Configurations 1 and 4 were not infringing; Configurations 2, 3, and 5 infringed system claim 1 of the '172 patent; Configurations 3 and 5 infringed system claim 3 of the '683 patent and method claims 26, 28, and 29 of the '683 patent; and Lawson did not infringe the '516 patent. ePlus, Inc. v. Lawson Software, Inc., No. 3:09-cv620, 2011 WL 2119410, at *4 (E.D.Va. May 23, 2011). The jury also concluded that none of the asserted claims were invalid. Id. The district court entered a permanent injunction against Lawson, preventing Lawson from making, using, selling, or offering to sell, Configurations 2, 3, or 5. Id. at *19.[2] ePlus then *1363 initiated contempt proceedings against Lawson, arguing that the design-around RQC module was not more than colorably different from the infringing RSS module. ePlus, Inc. v. Lawson Software, Inc., 946 F.Supp.2d. 472, 475-76 (E.D.Va.2013).
Lawson appealed the validity of the two system claims, the jury’s infringement findings as to all claims, and the district court’s entry of an injunction. ePlus I, 700 F.3d at 516-17. Importantly, Lawson did not appeal the validity determinations regarding claims 26, 28, and 29 of the '683 patent. We concluded that the system claims were invalid as indefinite, and reversed the district court’s denial of judgment as a matter of law for noninfringement of claims 28 and 29 of the '683 patent. Id. at 523. We affirmed, however, the jury’s finding of infringement of claim 26 of the '683 patent.[3] We returned the case to the district court with a very limited remand instruction: “We remand to the district court to consider what changes are required to the terms of the injunction, consistent with this opinion. In all other respects, we affirm.” Id. Our remand instruction merely recognized the district court’s inherent continuing equitable powers over the scope of its injunction. Importantly, neither our opinion nor our remand instruction vacated the injunction. The judgment that claim 26 was valid and infringed — one of the judgments upon which the injunction was predicated — remained intact, as did the injunction.
On remand, Lawson moved to modify or vacate the injunction under Federal Rule of Civil Procedure 60(b). The district court concluded that “the injunction must be modified so as to no longer apply to Configuration No. 2. The injunction shall remain in effect in all other respects.” ePlus, Inc. v. Lawson Software, Inc., 946 F.Supp.2d 459, 471 (E.D.Va.2013) (also holding that aspects of the injunction related to Configuration Nos. 2 and 5 “remain undisturbed by the Federal Circuit decision”). Thus, the only modification necessary under our remand instruction “consistent with [our] opinion” was that Configuration 2 had to be removed from the scope of the injunction as claim 1 of the '172 patent, the sole basis for infringement by Configuration 2, was held invalid. Id. Lawson never contended that the number of claims of the '683 patent that were infringed would or should impact the scope of the products enjoined, or even that the number of patents infringed by the same products was material to the nature of the injunctive relief. Id. at 466-70 (noting that Lawson sought to alter the scope of the injunction only on the basis *1364 that just method claims remained infringed after ePlus I, and “only 150 Lawson customers would be affected by the injunction”). Thus, while reference to Configuration 2 was removed from the injunction, the activities enjoined did not change. Id. at 471. Separately, the district court concluded that Lawson had been in contempt of the injunction since soon after it was entered, and awarded ePlus disgorgement of Lawson’s profits. ePlus, Inc. v. Lawson Software, Inc., 946 F.Supp.2d 472, 489-93 (E.D.Va.2013). Lawson appealed the district court’s contempt order and ruling on the Rule 60(b) motion.
There are crucial differences between these facts and the facts in Fresenius II. First, Fresenius failed to appeal the pre-verdict damages judgment from the district court, but did appeal the validity of all relevant claims-at-issue. As the PTO’s reexamination determination involved the validity of some of the claims-at-issue, Fresenius at least continued to press the validity of the patents in its first appeal. Further, while Fresenius did not directly appeal the pre-verdict damages award in Fresenius I, it did move for a new trial on damages on remand premised on the “further proceedings” language in our remand instruction, which it then appealed in Fre-senius II. In the present appeal, Lawson never appealed the validity of claim 26 of the '683 patent and never sought to press the issue again, either before the trial court or this one. The judgment that claim 26 of the '683 patent was valid became final when the district court entered final judgment and Lawson chose not to appeal that judgment to this court. While the PTO did find claim 26 of the '683 patent to be invalid through ex parte reexamination proceedings, and we affirmed that decision in In re ePlus, Inc., 540 Fed.Appx. 998 (Fed.Cir.2013), the validity of claim 26 of the '683 patent as between ePlus and Lawson with regards to the continuing injunction (at least until the decision in In re ePlus mandated) was final well before that point in time. See Function Media, L.L.C. v. Kappos, 508 Fed.Appx. 953, 956 (Fed.Cir.2013) (holding that a party’s failure to appeal from a district court’s judgment of no invalidity barred that party from seeking reexamination of those claims); Odetics, Inc. v. Storage Tech. Corp., 185 F.3d 1259, 1275 (Fed. Cir.1999) (holding that failure of a party to cross-appeal the issue of validity “pre-cludfed] further consideration of the issue”); cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir.2007) (the mandate rule “forecloses litigation of issues decided by the district court but foregone on appeal”); Bullen v. De Bretteville, 239 F.2d 824, 829 (9th Cir.1956), overruled on other grounds, Lacey v. Maricopa Cnty., 693 F.3d 896 (9th Cir.2012) (“A case remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined.”).
Second, the remand instructions in ePlus I and Fresenius I were different in important, material respects. In Freseni-us I, we vacated the injunction and the postverdict royalty awards, instructed the district court to “revise or reconsider” the injunction, and remanded “for further proceedings consistent with this opinion.” Fresenius I, 582 F.3d at 1304. By vacating the injunction, we required the district court to analyze the injunction anew. Further, in Fresenius II we found that, by remanding “for further proceedings consistent with this opinion,” the district court was free to consider other aspects of the case, including Fresenius’s motion for a new trial regarding pre-verdict damages. *1365 Here, we did not vacate the injunction, which was the only form of remedy available to ePlus. By not vacating the injunction, the injunction remained in force and any on-going infringing activity by Lawson would be potential contemptible conduct. We did no more than suggest that the district court “consider” any necessary changes to the injunction, consistent with the district court’s equitable powers; we did not direct the district court to “revise or reconsider” the injunction. Finally, we conspicuously did not remand for “any further proceedings consistent with this opinion.” As the majority in Fresenius II recognized in distinguishing QUAL-COMM, Inc. v. FCC, 181 F.3d 1370, 1380 (D.C.Cir.1999), the scope of the appellate remand instruction is crucial to the preclu-sive effect of an intervening PTO reexamination determination. Fresenius II, 721 F.3d at 1346 n. 12.
The Fresenius II majority concluded that the remand instruction in QUAL-COMM was for “specific, immediate relief for a party,” while it found the remand instruction in Fresenius I more open-ended — “for further proceedings.” Id. The remand instruction in ePlus I, like that in QUALCOMM, did contemplate “specific, immediate relief for a party” — Configuration 2 should be removed from the scope of the injunction, but the injunction remains in force subject only to the district court’s continuing equitable power over it. And, the remand instruction in ePlus I noticeably does not include an order for the district court to undertake “further proceedings.” Fresenius I, 582 F.3d at 1304. Thus, as the Fresenius II majority contemplated when attempting to distinguish the United States Court of Appeals for the District of Columbia’s (“D.C. Circuit”) apparently contrary ruling in QUALCOMM, the more limited scope of the remand order from ePlus I differentiates the present appeal from that in Fresenius II.
Finally, the nature of the remedies at issue on appeal distinguishes the two cases. In Fresenius II, the majority determined that both pre-verdict and post-verdict damages would be vacated in light of the PTO reexamination results because the scope of monetary remedies was not yet final. That is not the case here. As noted, I agree with the majority that the injunction should be vacated prospectively from the date when In re ePlus mandated, and that any coercive civil remedies should be vacated since it would be inappropriate to force Lawson to comply with an injunction that is no longer enforceable. As the majority correctly states, an injunction is a “continuing decree” that must not be enforced prospectively if the right underlying the decree is abrogated. Maj. Op. at 1355-57 (quoting Pennsylvania. v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 422, 15 L.Ed. 435 (1855)). I disagree, however, that the results of In re ePlus require that we vacate the compensatory civil contempt order.
Lawson’s conduct giving rise to the contempt order occurred while the injunction, with regards to Configurations 3 and 5, was valid under ePlus I. While we remanded to allow the district court to use its inherent equitable powers to remove Configuration 2 from the scope of the injunction, we retained the jury’s infringement finding with regards to claim 26 of the '683 patent, Lawson did not appeal the validity of claim 26, and we did not vacate the injunction. In a contempt proceeding, the putative contemnor may not challenge the correctness of the underlying order or attack the validity of the underlying basis for an injunction unless the court issuing the injunction had no jurisdiction to do *1366 so.[4] Maggio v. Zeitz, 333 U.S. 56, 68-69, 68 S.Ct. 401, 92 L.Ed. 476 (1948); Proveris Scientific Corp. v. Innovasystems, Inc., 739 F.3d 1367, 1370 (Fed.Cir.2014) (“ ‘In a contempt proceeding to enforce [an] injunction ..., the only available defense for anyone bound by the injunction was that the [newly accused product] did not infringe .... Validity and infringement by the original device were not open to challenge.’ ”) (quoting Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 154 F.3d 1345, 1350 (Fed.Cir.1998)). All that remained available for review in the current appeal was the prospective validity of the injunction and the propriety of findings made during the contempt proceeding, not the underlying basis for the injunction at issue in the contempt proceeding. Thus, the underlying basis of the contempt award, which is the only aspect of the contempt proceeding that could be influenced by the results of In re ePlus, was not at issue during the district court contempt proceedings, and is not at issue in this appeal.
For these reasons, I believe that the majority incorrectly holds that Fresenius II requires that we to vacate the compensatory contempt award in light of In re ePlus.[5]
II
If the majority is correct that Fresenius II requires us to vacate the compensatory contempt award, even though Lawson failed to appeal the judgment finding claim 26 of the '683 patent valid and even though we did not vacate the injunction or remand for open-ended proceedings, then Freseni-us II is even more concerning than I first believed. I continue to believe that we wrongly decided Fresenius II. As detailed in my dissent to the denial of the petition for rehearing en banc, Fresenius, 733 F.3d at 1373-81 (O’Malley, J., dissenting from *1367 denial of petition for rehearing en banc), the majority in Fresenius II erroneously analyzed both the finality of the issues on appeal and the scope of our appellate remand instruction in Fresenius I. These arguments apply with even greater force and urgency here.
The majority’s approach to finality will further displace the critical role of district courts in patent infringement suits. According to the majority, a decision of the PTO, an administrative agency under a coordinate branch of government, can displace a judgment of an Article III court. Validity of claim 26 became final when Lawson failed to appeal the issue in ePlus I and our disposition did not reopen the judgment for any further proceedings regarding the validity of any of the claims-at-issue, nor did it leave the remedy open in the sense Fresenius II said Fresenius I did. By extending Fresenius II to these materially different circumstances, the majority assumes that any determination made during an infringement case, even if that specific issue is never appealed, can be nullified by the action of an administrative agency as long as anything — even a fully discretionary “consideration” of an intact remedy — remains available. The majority’s approach essentially allows an executive agency action to render both the panel opinion in ePlus I and the district court’s judgment regarding validity advisory opinions. That result ignores the role of Article III courts in our constitutional structure. See Hayburn’s Case, 2 U.S. (2 Dall.) 409, 411 (1792) (Chief Justice Jay and Justice Cushing writing, in an opinion for the Circuit Court for the District of New York, that the executive branch may not “sit as a court of errors on the judicial acts or opinions” of the federal courts); QUALCOMM, 181 F.3d at 1379-80 (discussing Plant v. Spendthrift Farm, Inc., 514 U.S. 211, 240, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), and the protection granted to final judgments of Article III courts from invalidation by coordinate branch activity under the separation of powers doctrine).
The majority’s approach is contrary to the well-established law of finality when the merits of an issue are conclusively decided. Fresenius II, 733 F.3d at 1375-77 (O’Malley, J., dissenting from denial of petition for rehearing en banc). And, that decision further deepens the circuit split between our court’s approach to finality and that of our sister circuits, as identified by Judge Newman in her dissent in Fresenius II, 721 F.3d at 1355-59 (Newman, J., dissenting). While it is true that a district court, in its equitable powers, retains the ability to alter the scope of an injunction prospectively, the district court here lacked the power to vacate the merits underlying our finding of infringement once the Supreme Court denied certiorari after ePlus I. Even further, we lacked the power in ePlus I to alter the jury’s finding regarding the validity of claim 26 of the '683 patent because Lawson did not appeal that issue. The majority, nevertheless, breaks away from well-established notions of finality to hold that the jury’s final determination that claim 26 was not invalid — a judgment justifying the injunction that led to the compensatory civil contempt order — must be vacated in light of a later determination by an executive agency.
The majority opinion also creates uncertainty for any future compensatory contempt awards due to the unique nature of injunctions, a point not contemplated in Fresenius II. District courts always retain the equitable power to revise injunctions prospectively in light of changed circumstance. Does this mean that, where an injunction is entered, the “scope of relief remains to be determined” in perpetuity? *1368 Maj. Op. at 1359. Even if we had affirmed all grounds in ePlus I and did not remand, Lawson could still have filed a Rule 60(b) motion and argued that, as long as the contempt proceedings were on appeal the “scope of relief remains to be determined” under the district court’s continuing power over the injunction. Would we have to vacate every civil contempt award where a later PTO decision invalidates the patent at issue in those contempt proceedings?[6]
The majority decision today exacerbates the circuit split between the Federal Circuit and the D.C. Circuit. As noted, the Fresenius II majority distinguished QUALCOMM by arguing that the D.C. Circuit ordered “specific” relief on remand, while our order for remand in Fresenius I was not sufficiently specific. Fresenius II, 721 F.3d at 1346 n. 12. Here, our remand order was significantly more specific than in Fresenius II — only allowing the district court to alter the scope of the injunction within its inherent equitable powers, but not permitting the district court to upset the final determinations on the merits or allowing the district court to undertake further proceedings. The majority here argues, however, that Fresenius II applies, despite our more specific remand instruction in ePlus I. It appears that no remand instruction would ever be specific enough to protect the integrity of an Article III court’s judgment as long as any “remand” occurs. That view strains concepts of finality beyond all recognition.
Finally, as I noted in my dissent from denial of rehearing en banc in Fresenius II, 733 F.3d at 1380-81 (O’Malley, J., dissenting from denial of petition for rehearing en banc), the view of finality we espouse in these two cases is a view of finality which is wildly divergent from that employed by this very court in other contexts. In Robert Bosch, LLC v. Pylon Manufacturing Corp., 719 F.3d 1305 (Fed. Cir.2013) (en banc), this court held, en banc, that liability determinations in patent cases are final for purposes of immediate appeal under 28 U.S.C. § 1292(c), even when a jury trial on damages and willfulness remains. See id. at 1316, 1319-20. There, we concluded that damages and willfulness determinations are sufficiently “ministerial” to constitute no more than an “accounting” within the meaning of § 1292(c), thus rendering the liability determination a “final” judgment for purposes of appeal.
Despite the very liberal view of finality we employed in that context, we continue to declare that we must employ the stingiest view of that concept when deciding at what point parties may rely on litigated determinations of their rights. This chasm between the sweeping rule laid down both in Fresenius II and here and the one the court established in Bosch is confusing. Notably, finality often may be applied less strictly for preclusion purposes than for purposes of appeal, not more so. See Miller Brewing Co. v. Joseph Schlitz Brewing Co., 605 F.2d 990, 996 (7th Cir.1979) (“To be ‘final’ for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. ‘Finality’ in the sense of 28 U.S.C. § 1291 is not required.”); see also Syverson v. Int’l Bus. Mach. Corp., 472 F.3d 1072, 1079 (9th *1369 Cir.2007); Henglein v. Colt Indus. Operating Corp., 260 F.3d 201, 209-10 (3d Cir.2001) (“[W]e commented that finality for purposes of issue preclusion is a more ‘pliant’ concept than it would be in other contexts.”); Swentek v. USAIR, Inc., 830 F.2d 552, 561 (4th Cir.1987), abrogated on other grounds, Mikels v. City of Durham, N.C., 183 F.3d 323 (4th Cir.1999) (“Finality for purposes of collateral estoppel is a flexible concept....”); Pye v. Dep’t of Transp. of Georgia, 513 F.2d 290, 292 (5th Cir.1975) (“To be final a judgment does not have to dispose of all matters involved in a proceeding.”); Zdanok v. Glidden Co., 327 F.2d 944, 955 (2d Cir.1964). Thus, it would seem that our jurisprudence should be the reverse of what it has become.
I see no way to reconcile the liberal view of finality for appeal purposes we adopted in Bosch with today’s view that finality almost never exists for preclusion purposes. I dissent from the majority’s decision. I would proceed to consider the merits of Lawson’s appeal from the trial court’s civil contempt findings.

. While Lawson contends it did not violate the district court's injunction, because the majority does not reach that question, neither do I. The current record contains a district court finding that Lawson did violate the injunction. The question I debate with the majority is whether we can reach the merits of that finding.

. Prior to entering the injunction, the district court excluded ePlus's expert report regarding damages, and did not permit ePlus to present evidence of damages due to prior discovery sanctions. ePlus, Inc. v. Lawson Software, Inc., 700 F.3d 509, 515 (Fed.Cir. *1363 2012) {“ePlus I”). Thus, ePlus’s only available remedy was an injunction.

. The majority claims that, in ePlus I, we upheld the finding of induced infringement of claim 26 based solely on “Lawson providing customer services,” and not due to sales. Maj. Op. at 1354. That is not accurate, as the language the majority omits from the same paragraph of ePlus I proves. Maj. Op. at 1354 n. 4. In ePlus I, we held that "there remains no serious dispute that Lawson’s customers infringe claim 26.” 700 F.3d at 520. After finding that Lawson directly infringed through its customer services, we held that “[flinally, we have reviewed the record and are satisfied that it contains sufficient evidence of Lawson’s intent and knowledge to allow a reasonable jury to conclude that Lawson induced its customers to infringe claim 26.” Id. at 521. We also affirmed the district court’s finding that there was sufficient evidence that Lawson was a contributory in-fringer. Id. at 523 n. 2. We thus affirmed that Lawson induced infringement, in part, through "selling and offering to sell the infringing systems,” without limiting our analysis to just the system claims. See ePlus, 2011 WL 3584313, at *4.

. The cases the majority relied upon, such as McLean v. Central States, S. & S. Areas Pension Fund, 762 F.2d 1204 (4th Cir.1985); Scott & Fetzer Co. v. Dile, 643 F.2d 670 (9th Cir.1981); ITT Community Development Corp. v. Barton, 569 F.2d 1351 (5th Cir.1978); Blaylock v. Cheker Oil Co., 547 F.2d 962 (6th Cir.1976); Latrobe Steel Co. v. United Steelworkers of America, AFL-CIO, 545 F.2d 1336 (3d Cir.1976); all involved both the underlying injunction and the contempt order simultaneously on direct appeal. Here, Lawson failed to appeal the validity of claim 26 of the '683 patent, we affirmed the juiy’s finding of infringement on that patent, and we did not vacate the injunction. While a district court retains the equitable power to revise an injunction prospectively, we did not vacate the injunction, and the injunction was final at the time of the allegedly contemptible conduct.
The majority further relies on Worden v. Searls, 121 U.S. 14, 7 S.Ct. 814, 30 L.Ed. 853 (1887). Like the cases noted above, Worden involved an injunction and contempt order which were simultaneously on direct appeal. Worden stands for "the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent.” Fresenius II, 733 F.3d at 1376 n. 5 (O’Malley, J., dissenting from denial of petition for rehearing en banc). Worden thus permits prospective challenges to an injunction and prevents a contempt finding predicated upon an injunction after the predicate for it no longer exits. Id. ("Thus, while the PTO’s cancellation of the patent renders it prospectively invalid, the cancellation cannot render a prior judgment for damages invalid.”). We affirmed the underlying injunction in ePlus I, rendering the injunction retrospectively final. Thus, because the contemptible conduct occurred before the PTO invalidated the patent upon which the retrospectively final injunction was predicated, it is not "curious” that Worden does not apply to these facts.

. As noted, given the grounds for our decision here, I express no opinion on the merits of Lawson's objections to the contempt findings.

. Indeed, parties have tíegun reading Freseni-us II broadly, arguing that the policies and rationales underlying that decision justify reopening even admittedly final judgments to give effect to later PTO decisions. See, e.g., Versata Software, Inc. v. SAP Am., Inc., No. 2:07-cv-153-RSP, 2014 WL 1600327, at *2 (E.D.Tex. Apr. 21, 2014) (dismissing infringer’s argument that its Rule 60(b)(6) motion to reopen a final judgment of validity should be granted in light of a later Board determination of invalidity), aff'd sub nom. Versata Computer Indus. Solution v. SAP Am., Inc., No. 14-1430, 564 Fed.Appx. 600, 2014 WL 2765230 (Fed.Cir. June 18, 2014) (per cu-riam).