**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP Nos.   CC-14-1226-KuDKi |
| ) | CC-14-1299-KuDKi |
| JOSEPH DEBILIO, ) | (related appeals) |
| ) | |
| Debtor. ) | Bk. No.   09-23812 |
| _____ ) | |
| JOSEPH DEBILIO; JOHN STEWART, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| JEFFREY IAN GOLDEN, Chapter 7 ) | |
| Trustee; VIBIANA DEBILIO, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued and Submitted on February 19, 2015
at Los Angeles, California

Filed – February 27, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

Appearances:    David Bruce Dimitruk argued for appellants Joseph DeBilio and John Stewart; David Edward Hays of Marshack Hays LLP argued for appellee Vibiana DeBilio[**]

Before: KURTZ, DUNN and KIRSCHER, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**]Appellee Jeffrey Ian Golden, chapter 7 trustee has not actively participated in this appeal.

**INTRODUCTION**

In debtor Joseph DeBilio's bankruptcy case, the chapter 7[1] trustee Jeffrey Golden filed a motion seeking approval of a settlement and sale between the bankruptcy estate and Vibiana DeBilio, Joseph's former spouse.[2] The bankruptcy court granted the motion, and Joseph appealed.

While Joseph's appeal from the sale/settlement order was pending, Joseph recorded notices of pending actions – or lis pendens – based on the DeBilios' state court marital dissolution proceedings. By recording the lis pendens, Joseph asserted a continuing interest in a number of parcels of real property even though the chapter 7 trustee had sold the estate's interest in those parcels in accordance with the sale/settlement order.

In response to the lis pendens, Vibiana commenced civil contempt proceedings in the bankruptcy court against Joseph and his counsel John Stewart. Ultimately, the court found Joseph and Stewart in contempt of court, awarded civil contempt sanctions and attorney fees, and expunged the lis pendens. Joseph and Stewart filed two new appeals which collectively challenged all of these rulings.

In September 2014, the Panel issued a decision disposing of the first appeal – the appeal from the sale/settlement order. The panel vacated that order. Because the bankruptcy court's

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2]For ease of reference, we refer to the DeBilios by their first names. No disrespect is intended.

2

contempt finding, its sanctions award, its fee award and its expungement of the lis pendens all were founded on the vacated sale/settlement order, we must REVERSE all of those rulings.

**FACTS**

Joseph and Vibiana were engaged in lengthy and contentious marital dissolution proceedings in the Orange County Superior Court (Case No. 04D009547). The state court entered an order of dissolution several years ago and entered a final support order in October 2012. Joseph appealed the state court's final support order to the California Court of Appeal, which appeal is still pending (Appeal No. G048015). When Joseph filed his bankruptcy case, the parties' dispute spilled over into the bankruptcy court.

In relevant part, Joseph opposed the chapter 7 trustee's motion for approval of a settlement and sale of estate assets between the chapter 7 trustee and Vibiana, pursuant to which the trustee agreed to sell to Vibiana virtually all of the estate's assets. The facts and proceedings leading up to the bankruptcy court's order granting the sale/settlement motion already have been described in the Panel's September 11, 2014 memorandum decision vacating the sale/settlement order (BAP No. CC-13-1441-TaPaKi). Therefore, we will limit our factual recitals in this decision to the circumstances leading up to the court's contempt, sanctions, fee and expungement rulings.

In December 2013, after the bankruptcy court's entry of the sale/settlement order, Stewart recorded the lis pendens on behalf of his client Joseph in the official records of both Orange County and San Bernardino County. Stewart then emailed Vibiana's

3

counsel to advise him of the lis pendens and to raise the topic of whether it might be time to discuss a global settlement. Upon learning of the lis pendens, Vibiana's counsel advised Stewart that the recordation contravened the bankruptcy court's sale/settlement order and that, unless Joseph voluntarily withdrew the lis pendens, Vibiana would seek expungement of the lis pendens as well as contempt sanctions against both Joseph and Stewart.

In February 2014, Vibiana filed her motion for expungement of the lis pendens and for entry of an order to show cause why Joseph and Stewart should not be held in contempt. The motion was served on both Joseph and Stewart by overnight mail. Neither Joseph nor Stewart have raised any issue regarding the manner in which the motion was served. After reviewing the motion, the bankruptcy court set a hearing date of April 2, 2014, and issued an order directing Joseph and Stewart to show cause: (1) why they should not be held in contempt; and (2) why the lis pendens should not be ordered expunged.

Vibiana's proofs of service indicate that Vibiana hired a process server to serve the order to show cause personally on both Joseph and Stewart. In turn, the process server left a service copy of the order to show cause with a receptionist at Stewart's place of business and did the same at Joseph's place of business.

Neither Joseph nor Stewart filed a written response to the order to show cause. At the hearing on the order to show cause, no one appeared on behalf of Joseph, but an attorney by the name of David Dimitruk specially appeared on behalf of Stewart and

4

argued that the order to show cause had not been properly served and, consequently, the bankruptcy court lacked personal jurisdiction over Stewart.

The court rejected this jurisdictional argument and further found that both Joseph and Stewart were in contempt of the court's sale/settlement order by virtue of the lis pendens they recorded. However, the court did not immediately award any contempt sanctions against Joseph and Stewart. Instead, the court set a continued hearing for the purpose of ascertaining the status of the contempt in roughly thirty days. The court further gave Joseph and Stewart until April 9, 2014 (seven days from the date of the first contempt hearing) to purge their contempt by withdrawing the lis pendens, and provided that they would be sanctioned $1,000 per day for every day after April 9 the lis pendens remained in effect. The court reserved the issues concerning Vibiana's requests for attorney fees and for expungement of the lis pendens. The court entered its order finding Joseph and Stewart in contempt of court on April 18, 2014, and Joseph and Stewart timely appealed that order.

Joseph and Stewart did not purge their contempt. At the continued contempt hearing held on May 13, 2014, Dimitruk once again appeared, this time for both Joseph and Stewart. First, the bankruptcy court rejected Joseph and Stewart's oral request that the court defer a further ruling in the contempt proceedings until the Panel resolved their motion for a stay pending the disposition of their appeal from the sale/settlement order. Then, the court granted Vibiana's request for an award of $3,500 in attorney fees she incurred in the contempt proceedings.

5

Relying on Cal. Civil Procedure Code ("C.C.P.") §§ 405.30, et seq., the court also granted Vibiana's request for expungement of the lis pendens. In addition, the court followed through with its imposition of sanctions of $1,000 per day, payable to the court, for a period of 24 days (from April 10, 2014 to May 13, 2014).

On May 27, 2014, the court entered its order memorializing its rulings on expungement, sanctions and fees. Joseph and Stewart also timely appealed that order.

**JURISDICTION**

We discuss the bankruptcy court's jurisdiction below. We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the bankruptcy court have personal jurisdiction over Joseph and Stewart?

2. Did the bankruptcy court have subject matter jurisdiction over Vibiana's motion?

3. Must we set aside the bankruptcy court's contempt, sanctions, fee and expungement rulings in light of the Panel's prior decision vacating the sale/settlement order?

**STANDARDS OF REVIEW**

When, as here, the facts relevant to the bankruptcy court's exercise of jurisdiction are undisputed, we review de novo questions regarding personal jurisdiction and subject matter jurisdiction. Sherrie Keys v. 701 Mariposa Project, LLC (In re 701 Mariposa Project, LLC), 514 B.R. 10, 14 (9th Cir. BAP 2014); Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard), 729 F.3d 1279, 1284 (9th Cir. 2013).

6

We review for an abuse of discretion the bankruptcy court's contempt, sanctions and fee rulings. See Nash v. Clark Cnty. Dist. Atty's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). We also review for an abuse of discretion the bankruptcy court's expungement order. Gonzalez v. Aurora Loan Servs. LLC (In re Gonzalez), 2012 WL 603747, *5 (9th Cir. BAP Feb. 2, 2012) (Mem. Dec.); Weston v. Rodriquez, 110 B.R. 452, 460 (E.D. Cal. 1989), aff'd, 967 F.2d 596 (9th Cir. 1992) (table).

The bankruptcy court abuses its discretion if its decision was based on an incorrect legal rule or its factual findings were illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

We will first address Joseph and Stewart's jurisdictional arguments. Joseph and Stewart contend that the bankruptcy court lacked personal jurisdiction over them. Joseph and Stewart point out that Central District of California Local Bankruptcy Rule 9020-1(e)(2) requires personal service of orders to show cause regarding contempt "on any entity not previously subject to the personal jurisdiction of the court." According to Joseph and Stewart, Vibiana's attempt to personally serve the order to show cause on both of them was defective because, under Rules 7004(a), 9014(b) and 9020 (making Civil Rule 4(e) applicable in contempt proceedings), personal service sufficient to confer personal jurisdiction over them could not be accomplished by merely leaving a copy of the order to show cause with their receptionists.

However, Joseph and Stewart's personal jurisdiction argument

7

incorrectly assumes that they were not already subject to the bankruptcy court's personal jurisdiction. In contested matters, the bankruptcy court typically obtains personal jurisdiction over the respondents when the **motion** is served upon the respondents in accordance with Rules 9014(b) and 7004. See In re 701 Mariposa Project, LLC, 514 B.R. at 16. Here, the record reflects that Vibiana served her contempt motion on both Joseph and Stewart by overnight mail at their usual places of business in accordance with Rules 9014(b) and 7004(b)(1). When the governing procedural rule (in this case, Rule 7004(b)(1)) permits service by mail, service by overnight mail falls within the scope of the rule. See Lyons P'ship, L.P. v. D & L Amusement & Entm't, 702 F.Supp.2d 104, 112 & n.2 (E.D.N.Y. 2010). Moreover, Joseph and Stewart never have raised any issue regarding service of the motion. Therefore, for purposes of the contempt proceedings, the bankruptcy court already had personal jurisdiction over both Joseph and Stewart at the time of service of the order to show cause; there was no need for the bankruptcy court to obtain personal jurisdiction over them a second time when the order to show cause was served.

Joseph and Stewart alternately contend that the bankruptcy court lacked subject matter jurisdiction. We disagree. Up until the time the trustee sold the estate's assets to Vibiana, those assets were property of the estate, and the trustee's sale/settlement motion covering those assets was a core bankruptcy proceeding over which the bankruptcy court duly exercised jurisdiction. See 28 U.S.C. § 157(b)(2)(A) and (N); see also 28 U.S.C. § 1334(e) (stating that federal court has

8

exclusive jurisdiction over estate property); <u>Teel v. Teel (In re Teel)</u>, 34 B.R. 762, 763-64 (9th Cir. BAP 1983) (same).

After the sale, the bankruptcy court continued to have ancillary jurisdiction to interpret and enforce the sale/settlement order. <u>See</u> <u>Travelers Indem. Co. v. Bailey</u>, 557 U.S. 137, 151 (2009). As the Ninth Circuit Court of Appeals has explained, bankruptcy courts have ancillary jurisdiction "to secure or preserve the fruits and advantages of a judgment or decree" it previously entered. <u>In re Wilshire Courtyard</u>, 729 F.3d at 1290 (citing <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 239 (1934)).

Joseph and Stewart nonetheless maintain that the bankruptcy court lacked subject matter jurisdiction to expunge the lis pendens because only "the court in which the action is pending" has authority to expunge a lis pendens under C.C.P. § 405.30. The "pending action" on which Joseph and Stewart based their lis pendens was the dissolution proceedings. Thus, they make a credible argument that any request to expunge **under C.C.P. § 405.30** should have been brought in the state court that presided over the dissolution proceedings. <u>See</u> <u>Formula Inc. v. Super. Ct.</u>, 168 Cal.App.4th 1455, 1464 (2008).

Even so, C.C.P. § 405.30 is not the exclusive remedy for an improperly filed lis pendens. Other California and federal authority arguably would have permitted the bankruptcy court to set aside the lis pendens. <u>See</u> <u>Formula Inc.</u>, 168 Cal.App.4th at 1465 (citing <u>Ward v. Super. Ct.</u>, 55 Cal.App.4th 60, 66-67 (1997)); <u>see also</u> § 105(a) (permitting bankruptcy courts to enter appropriate orders to carry out the provisions of the Bankruptcy

9

Code).

In any event, for jurisdictional purposes, we need not decide whether the bankruptcy court erred when it expunged the lis pendens. It suffices for us to say that Joseph and Stewart's argument regarding the bankruptcy court's lack of authority under C.C.P. § 405.30 does not implicate or alter the bankruptcy court's subject matter jurisdiction under the ancillary jurisdiction doctrine to interpret and enforce its prior sale/settlement order, which is precisely what the bankruptcy court was doing when it ordered the lis pendens expunged. Simply put, the bankruptcy court had ancillary jurisdiction over the subject matter of Vibiana's motion regardless of whether the court had authority under C.C.P. § 405.30 to expunge the lis pendens.

Having dispensed with Joseph and Stewart's jurisdictional arguments, the only other issue we need to address is the effect of the Panel's prior decision disposing of the appeal from the sale/settlement order. It is well established in the Ninth Circuit that a civil contempt ruling does not survive when an appellate court has set aside the underlying judgment or order on which the civil contempt ruling was based. See, e.g., World Wide Rush, LLC v. City of Los Angeles, 606 F.3d 676, 689 (9th Cir. 2010); Kirkland v. Legion Ins. Co., 343 F.3d 1135, 1142-43 (9th Cir. 2003); Scott & Fetzer Co. v. Dile, 643 F.2d 670, 675 (9th Cir. 1981).

It makes no difference that the bankruptcy court here awarded both attorney fees and coercive contempt sanctions. The Ninth Circuit has explicitly held that both compensatory and

10

coercive contempt sanctions are civil in nature, and both must be set aside when the underlying order or judgment has been set aside. <u>Scott & Fetzer Co.</u>, 643 F.2d at 675. Nor can we let stand the bankruptcy court's expungement ruling. The Panel's prior decision vacating the sale/settlement order is the law of the case. The expungement ruling patently hinged on the efficacy of the sale/settlement order. Therefore, now that the sale/settlement order has been set aside, law of the case principles do not permit us to let stand the bankruptcy court's expungement ruling. <u>See</u> <u>Two Lontsmon Magnolia, LLC v. Papanicolaou (In re Papanicolaou)</u>, 2005 WL 7142136, at *1 (9th Cir. BAP Feb. 16, 2005) (Mem. Dec.) (holding that, under law of the case doctrine, panel was compelled to reverse orders awarding prevailing party attorney fees when prior panel had reversed underlying bankruptcy court judgment on which fee awards had been based); <u>see also</u> <u>Am. Express Travel Related Servs. Co. v. Fraschilla (In re Fraschilla)</u>, 235 B.R. 449, 454 (9th Cir. BAP 1999), <u>aff'd</u>, 242 F.3d 381 (9th Cir. 2000) (table) (generally explaining law of the case doctrine).

Vibiana argues that we are not obliged to overturn the bankruptcy court's contempt rulings just because the panel vacated the underlying sale/settlement order. We disagree. The Ninth Circuit decisions we cited above are controlling and mandate this result. <u>See</u> <u>World Wide Rush, LLC</u>, 606 F.3d at 689; <u>Kirkland</u>, 343 F.3d at 1142-43; <u>Scott & Fetzer Co.</u>, 643 F.2d at 675. The cases Vibiana relies on are inapposite. <u>See, e.g.</u>, <u>Maness v. Meyers</u>, 419 U.S. 449, 454 (1975); <u>Chapman v. Pac. Tel. & Tel. Co.</u>, 613 F.2d 193, 195 (9th Cir. 1979). They are criminal

11

contempt cases, and criminal contempt sanctions (unlike civil contempt sanctions) can and do survive the reversal of the underlying order. See ePlus, Inc. v. Lawson Software, Inc., 760 F.3d 1350, 1357 (Fed. Cir. 2014).

Vibiana alternately argues that Joseph and Stewart forfeited this argument because they did not raise it first in the bankruptcy court. But the Ninth Circuit cases we cited above simply do not require the prevailing party to raise first in the trial court the court of appeals' reversal of the underlying order. Therefore, we reject Vibiana's forfeiture argument.

**CONCLUSION**

While Joseph and Stewart's current appeals raise a number of other issues regarding the correctness of the bankruptcy court's sanctions and expungement rulings, it is not necessary for us to reach any of those issues. For the reasons set forth above, we REVERSE the bankruptcy court's contempt, sanctions, fee and expungement rulings.

12