# United States Court of Appeals for the Federal Circuit

---

**EPLUS, INC.,**
*Plaintiff-Appellee,*

**v.**

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant.*

---

2013-1506, -1587

---

Appeals from the United States District Court for the Eastern District of Virginia in No. 09-CV-0620, Senior Judge Robert E. Payne.

---

Decided: July 25, 2014

---

MICHAEL G. STRAPP, Goodwin Procter LLP, of Boston, Massachusetts, argued for plaintiff-appellee. With him on the brief were JENNIFER A. ALBERT and DAVID M. YOUNG, of Washington, DC.

MARK A. PERRY, Gibson, Dunn & Crutcher, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were BLAINE H. EVANSON; and JOSH A. KREVITT, DANIEL J. THOMASCH, RICHARD W. MARK, of New York, New York. Of counsel on the brief were DONALD R. DUNNER and ERIKA H. ARNER, Finnegan, Henderson, Farabow, Garrett & Dunner LLP, of Washington, DC.

———————————

Before, PROST, *Chief Judge*,[*] DYK and O'MALLEY, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* O'Malley.

DYK, *Circuit Judge.*

ePlus, Inc. ("ePlus"), the assignee of U.S. Patent Nos. 6,023,683 (the "'683 patent") and 6,505,172 (the "'172 patent"), sued Lawson Software, Inc. ("Lawson") for infringement. The district court found two of the asserted system claims and three of the asserted method claims not invalid, and a jury found that Lawson infringed those claims. In an earlier appeal, we reversed in part on the ground that the system claims were invalid and that two of the asserted method claims were not infringed. We affirmed only the infringement verdict as to one method claim—claim 26—of the '683 patent. We remanded to the district court to make necessary modifications to the injunction.

On remand, the district court modified the injunction in one respect and found Lawson in civil contempt for violating the injunction. Lawson appealed both the injunction and contempt order. During the pendency of Lawson's appeals, the United States Patent and Trademark Office ("PTO") completed a reexamination of the '683 patent and determined that claim 26 was invalid. In a separate appeal, we affirmed the PTO's invalidity determination, and the PTO cancelled claim 26. We now vacate the injunction and contempt order because both

———————————

[*]    Sharon Prost assumed the position of Chief Judge on May 31, 2014.

were based on claim 26, which the PTO has now cancelled.

## BACKGROUND

This case raises two issues. The first is whether an injunction can continue after the PTO has cancelled the only claim on which the injunction was based. The second is whether civil contempt remedies based on the violation of an injunction are appropriate when the injunction has been overturned on direct appeal.

## I

ePlus owns the '172 patent and the '683 patent, which both relate to methods and systems for electronic sourcing. *See ePlus v. Lawson*, 700 F.3d 509, 512 (Fed. Cir. 2012) ("*ePlus I*"). The claimed methods and systems are directed to using electronic databases to search for product information and ordering selected products from third-party vendors. The only claim now at issue in this appeal, claim 26 of the '683 patent, recites a "method comprising the steps of": "maintaining at least two product catalogs on a database," "selecting product catalogs to search," "searching for matching items," "building a requisition," "processing the requisition to generate one or more purchase orders," and "determining whether a selected matching item is available in inventory." '683 patent col. 26 l. 61 to col. 27 l. 7.

In 2009, ePlus sued Lawson for infringement of the '683 patent and the '172 patent in the Eastern District of Virginia.[1] Lawson sells computer software to institutional customers. Its products are modular—customers

---

[1]    ePlus also alleged infringement of certain claims of U.S. Patent No. 6,055,516. The jury found none of those claims infringed, and ePlus did not appeal that aspect of the jury verdict.

decide which individual software components to purchase based on their needs. As a result, different customers use different combinations, or configurations, of software modules. The different configurations generally let users search for, select, and order products electronically, but the nature and extent of those capabilities vary depending on the particular modules a customer selects. When ePlus sued Lawson, the basic software component ("Core Procurement") allowed users to load products into an internal database ("Item Master"), search that database for products, create a requisition listing multiple selected products, and generate individual purchase orders to transmit to vendors. Requisition Self-Service ("RSS") was a module that provided a user interface for the Core Procurement unit. The Procurement Punchout module ("Punchout") let users search third-party vendors' databases for products and put those vendors' products on requisitions along with products stored in the internal Item Master database.

Given the modular nature of Lawson's products, ePlus asserted different patent claims against five distinct configurations of software modules ("Configurations 1–5"). With respect to the asserted claims of the '683 patent and the '172 patent, the jury found that three of the five accused configurations infringed. Configurations 3 and 5 were found to infringe two system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) and three method claims (claims 26, 28, and 29 of the '683 patent). Configuration 2 was found to infringe one system claim (claim 1 of the '172 patent). Configurations 1 and 4 were found not to infringe any of the claims asserted against them.

Pursuant to the jury verdicts, the district court permanently enjoined Lawson from

> directly or indirectly making, using, offering to sell, or selling within the United States or import-

ing into the United States any of the [adjudged infringing] product configurations and/or installation, implementation, design, configuration, consulting, upgrade, maintenance and support and training and other related and associated services and any colorable variations thereof (the "Infringing Products and Services").

J.A. 4263. The court defined the "Infringing Products and Services" to include the three software configurations (Configurations 2, 3, and 5) adjudged infringing by the jury. The court also enjoined Lawson from "[c]irculating, publishing or disseminating within the United States any literature or information that encourages the use, sale or importation of any of the Infringing Products and Services," and from "[a]iding and abetting, actively inducing, or in any way contributing to the making, use, sale or importation of any of the Infringing Products and Services." J.A. 4264. Lawson appealed.

On this first appeal, we determined that the two asserted system claims (claim 1 of the '172 patent and claim 3 of the '683 patent) were invalid, and that two of the three asserted method claims (claims 28 and 29 of the '683 patent) were not infringed. We affirmed only the infringement finding as to method claim 26. Only Configurations 3 and 5 were found to infringe that claim. As a result of our holding on appeal, Configuration 2 was no longer infringing. We remanded "for the district court to consider what changes are required to the terms of the injunction, consistent with this opinion." *ePlus I*, 700 F.3d at 523.

After our ruling, the district court ordered the parties to file statements of position on the effect of our decision on the injunction. These were filed before Lawson's Rule 60(b) motion discussed below. Most importantly, Lawson challenged the very provisions of the injunction that led to the contempt sanctions sought by ePlus—namely, the bar

against sales of particular software products. Originally, these provisions concerning software sales were supported by the jury's findings of infringement of the system claims (claim 1 of the '172 patent and claim 3 of the '683 patent).[2] After our decision vacated those findings, Lawson argued that infringement of a single method claim (claim 26 of the '683 patent) could not support the injunction against product sales (and hence, contempt sanctions based on such sales) and that our opinion distinguished "sales" of software from "installation" and other services provided to customers.[3] This court upheld the finding of induced infringement of claim 26 not based on sales, but based on Lawson's providing customer services, including software installation, demonstrations, and maintenance.[4] Lawson also urged that, in light of this court's narrowing

---

[2]    In sustaining the jury verdict, the district court relied on the determination that "Lawson actively induces its customers' direct infringement by selling and offering to sell the infringing systems with the intent that its customers use those systems in an infringing manner." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 3584313, at *4 (E.D.V.A., Aug. 12, 2011). We did not sustain the finding of infringement of the system claims or the findings of direct and induced infringement based on the sales of the systems.

[3]    We recognized that "[i]n addition to selling procurement software, Lawson provides services to customers who purchase its products. These services may include installation and maintenance of the products." *ePlus I*, 700 F.3d at 514.

[4]    We relied on "evidence that Lawson installed, maintained, demonstrated and managed the infringing systems for its customers" to conclude that a reasonable jury could "infer that Lawson performed the steps of claim 26" and "induced its customers to infringe claim 26." *Id.* at 521.

of the jury's infringement findings, the enjoined software products were capable of significant non-infringing uses and sales of such software should not be enjoined. Additionally, Lawson argued that under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), the balancing of equities no longer supported any injunction. ePlus argued that the only modification required was the removal of Configuration 2 from the list of enjoined products. Lawson thereafter filed a Rule 60(b) motion to modify the injunction.

The district court agreed with ePlus's position and ordered that the injunction be "modified by deleting from its scope the product . . . colloquially known as 'Configuration 2,'" and "remain in effect in all other respects." J.A. 1.

On remand, in addition to reconsidering the injunction, the district court also instituted contempt proceedings. Following the jury verdicts, Lawson had decommissioned and stopped selling products with RSS, the user interface module for Core Procurement, the basic building block of Lawson's system. Lawson had also redesigned its software in two pertinent respects. First, it redesigned Configurations 3, and 5 by developing a new module, Requisition Center ("RQC") to replace the RSS user interface module. As redesigned, RQC prevented a user from simultaneously putting items from both the internal Item Master database and a third-party vendor's database (accessible via Punchout) on the same requisition. Second, Lawson redesigned Configurations 3 and 5 by developing downloadable software ("Patch 1") that limited the functionality of Punchout in Configurations 3 and 5. As modified by Patch 1, those configurations no longer allowed users to put items from multiple third-party vendors on the same requisition when using Punchout. As a result, users could only build requisitions with products from the internal Item Master database or from a single third-party database.

ePlus alleged that Lawson was in contempt for violating the injunction with respect to the redesigned software, arguing that the changes did not make the software more than colorably different from Configurations 3 and 5, and that the redesigned software infringed claim 26. Lawson argued that it was not violating the injunction because the redesigned software was more than colorably different from the originally accused software and that ePlus could not show that the redesigned software continued to infringe claim 26. The court held Lawson in contempt for violating the injunction, finding that the redesigned products were no more than colorably different and infringed. The court ordered Lawson to pay a compensatory fine of $18,167,950 and coercive daily fines of $62,362 until it could show compliance with the injunction. It declined to award enhanced damages or attorneys' fees. Lawson appealed the district court's modified injunction and contempt order. We stayed the accumulation of fines during the pendency of the appeals.

While Lawson's appeals were pending, in another case, we affirmed the PTO's reexamination decision invalidating claim 26 of the '683 patent. *In re ePlus, Inc.*, 540 Fed App'x 998 (Fed. Cir. 2013) (per curiam). Our mandate issued, and the PTO cancelled claim 26 in April 2014.

We have jurisdiction over the appeal of the injunction pursuant to 28 U.S.C. § 1292(a)(1) & (c)(1) and over the appeal of the contempt order pursuant to 28 U.S.C § 1291. We review a grant, denial, or modification of an injunction in a patent case for abuse of discretion. *Int'l Rectifier Corp. v. Samsung Elecs. Co.*, 361 F.3d 1355, 1359 (Fed. Cir. 2004) (citing *Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 881 (Fed. Cir. 1995)). We review a contempt order based on an injunction against infringement for abuse of discretion. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1292 (Fed. Cir. 2012)

(citing *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1370 (Fed. Cir. 2010)).

DISCUSSION

I. Injunction

The first question is whether the district court's modified injunction against Lawson must be set aside now that the PTO has cancelled the patent claim on which it is based. It is well established that an injunction must be set aside when the legal basis for it has ceased to exist. In *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 54 U.S. (13 How.) 518, 577–79 (1851), the Supreme Court approved an injunction sought by the state of Pennsylvania, ordering the removal of a bridge across the Ohio River because it illegally obstructed navigation. Congress subsequently enacted a law authorizing the bridge. *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1855) ("*Wheeling Bridge*"). Pennsylvania requested that the Court execute its decree ordering the abatement of the bridge and punish the defendants for contempt for violating the Court's order by failing to remove the bridge. *Id.* at 427. The Court denied the motions and instead dissolved the injunction because "there [wa]s no longer any interference with the enjoyment of the public right inconsistent with law." *Id.* at 432. The Court held that an injunction "is executory, a continuing decree . . . . If, in the mean[]time, since the decree, this right has been modified by the competent authority . . . it is quite plain the decree of the court cannot be enforced." *Id.* at 431–32. Because the bridge was no longer unlawful, the Court had to set aside the previous order rather than enforce it.

"The principles of the *Wheeling Bridge* case have repeatedly been followed" by the Supreme Court as well as "by lower federal and state courts." *Sys. Fed'n No. 91, Ry. Emps' Dep't., AFL-CIO v. Wright*, 364 U.S. 642, 650–52 (1961) (holding that it is an abuse of discretion not to

modify an injunction when, because of a change in the law, "[t]he parties have no power to require of the court continuing enforcement of rights the statute no longer gives"); *see also, e.g.*, *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004) (vacating injunction where subsequently enacted legislation relieved executive department of duties required by injunction because "an injunction may be a final judgment for purposes of appeal, [but] it is not the last word of the judicial department because any provision of prospective relief is subject to the continuing supervisory jurisdiction of the court, and therefore may be altered according to subsequent changes in the law" (quoting *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1096–97 (D.C. Cir. 2001) (internal quotation marks omitted in original) (quoting *Miller v. French,* 530 U.S. 327, 347 (2000)))); *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1169–70 (10th Cir. 2004) (injunction arising from settlement agreement "must give way" because it was inconsistent with new legislation); *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 184 (3rd Cir. 1999) ("*Wheeling Bridge* therefore stands for the proposition that when Congress changes the law underlying a judgment awarding prospective injunctive relief, the judgment becomes void to the extent that it is inconsistent with the amended law.").

Those principles reflect the fact that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . . [A] court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *United States v. Swift & Co.*, 286 U.S. 106, 114–15 (1932); *see also Salazar v. Buono*, 559 U.S. 700, 718 (2010) ("Where legislative action has undermined the basis upon which relief has previously been granted, a court must consider whether the original finding of wrongdoing continues to justify the court's

intervention." (citing *Wright*, 364 U.S. at 648–49 and *Wheeling Bridge*, 59 U.S. at 430–32)).

Our court has applied these principles to an injunction barring infringement of patents later found to be invalid. *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1584 (Fed. Cir. 1994). In *Mendenhall*, we reviewed injunctions based on findings of patent infringement. *Id.* at 1576. While those injunctions were pending on appeal, the same patents were held invalid in another case in our court. *Id.* at 1576–77. We held that the injunctions had to be reversed following the final judgment of patent invalidity. *Id.* at 1584. We recognized that upholding injunctions would be "anomalous in the extreme in connection with patents this court has just held invalid." *Id.* at 1578.

Under these authorities, there is no longer any legal basis to enjoin Lawson's conduct based on rights that claim 26 of the '683 patent previously conferred as those rights have ceased to exist. The PTO found claim 26 invalid, we affirmed that decision, our mandate issued, and the PTO cancelled the claim. Claim 26 no longer confers any rights that support an injunction against infringement. During oral argument, ePlus even admitted that there could be no injunction moving forward. The PTO's cancellation of claim 26 requires that we now vacate the injunction.

## II. Civil Contempt Remedies

The second question is whether the civil contempt sanctions should be set aside. It is well established that "[v]iolations of an order are punishable as criminal contempt even though the order is set aside on appeal . . . or though the basic action has become moot." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 & n.60 (1947) (citing *Worden v. Searls*, 121 U.S. 14 (1887); *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911)); *see also Walker v. Birmingham*, 388 US 307, 319 (1967) (upholding criminal contempt sentences

for violation of injunction regardless of the validity of the injunction); *Howat v. State of Kansas*, 258 U.S. 181, 189–90 (1922) (criminal contempt sentences do not depend on constitutionality of law on which injunction is based). If Lawson had been found guilty of criminal contempt, that order and any resulting penalties would not be set aside simply because claim 26 had been cancelled.

However, the district court found Lawson in civil, not criminal, contempt. It awarded "compensation" to ePlus for economic injury during the period that the injunction was in effect, based on the Supreme Court decision in *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448 (1932). In *Leman*, the Court upheld an award of the infringer's profits "not by way of punishment but to insure full compensation." *Id.* at 456.[5] The rule for civil contempt is that "[t]he right to remedial relief falls with an injunction which events prove was erroneously issued." *United Mine Workers*, 330 U.S. at 295 (citing *Worden*, 121 U.S. at 25, 26; *Salvage Process*, 86 F.2d at 727; *S. Anargyros v. Anargyros & Co.,* 191 F. 208 (C.C.D. Cal. 1911)). The Supreme Court distinguished civil from criminal contempt, explaining that:

> It does not follow, of course, that simply because a defendant may be punished for criminal contempt for disobedience of an order later set aside on appeal, that the plaintiff in the action may profit by way of a fine imposed in a simultaneous proceeding for civil contempt based upon a violation of the same order.

---

[5]     The district court also ordered coercive sanctions. We stayed these sanctions pending the resolution of this appeal. There is no question that ePlus is not entitled to seek coercive sanctions now that the injunction has been vacated.

*Id.* at 294–95. The Court explained that if the injunction had been overturned, "the conviction for civil contempt would be reversed in its entirety." *Id.* at 295. "[A party's] right, as a civil litigant, to the [civil] compensatory fine is dependent upon the outcome of the basic controversy." *Id.* at 304. Civil contempt sanctions must be set aside when the resolution of the case requires overturning the injunction on which those sanctions are based.

The Supreme Court has specifically applied this rule to set aside civil contempt sanctions imposed for violating an injunction based on patents subsequently found to be invalid. *Worden*, 121 U.S at 26.[6] In *Worden*, the district court had declared the patent not invalid, found the defendants liable for infringement, and ordered a permanent injunction. *Id.* at 19. The court also found the defendants in contempt of its preliminary injunction and ordered them to pay fines for civil contempt. *Id.* at 20. The defendants appealed the court's rulings on infringement and validity, as well as the contempt order and resulting fines. *Id.* at 20, 24. On appeal, the Supreme Court found the patent invalid and, on that basis, vacated the injunction. *Id.* at 25. Because the Court found the patent invalid, *id.* at 24, and reversed the injunction on appeal, *id.* at

---

[6]  Curiously, the dissent now finds *Worden* inapplicable to this situation, Diss. Op. at 11 n.4, after previously urging in *Fresenius* that *Worden* required the reversal of contempt sanctions in such situations. Judge O'Malley, in dissenting from the denial of en banc rehearing in *Fresenius*, stated: "[*Worden*] merely stands for the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1376 n.5 (Fed. Cir. 2013) (dissenting from the denial of the petition for rehearing en banc) (citing *Worden*, 121 U.S. at 25).

26, it set aside the civil contempt order and resulting fines, declaring that the sanctions "cannot be upheld." *Id.* The Court explained that the civil sanctions were "incidents of [the patentee's] claims in the suit. His right to them was, if it existed at all, founded on his right to the injunction, and that was founded on the validity of his patent." *Id.* at 25. Under *Worden*, compensatory civil contempt remedies must be set aside when the injunction on which they are based is set aside because the patent is determined to be invalid.[7] Other circuits have similarly held that civil contempt sanctions must be set aside if the underlying injunction is reversed on appeal.[8]

---

[7]    ePlus claims that some cases it cites have reached contrary results, but those cases involve situations where the basis for the injunction was eliminated prospectively only, *see, e.g.*, *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992) (passage of Agricultural Credit Act made injunction moot, not baseless), *Coleman v. Espy*, 986 F.2d 1184, 1190 (8th Cir. 1993) (citing *Klett*, 965 F.2d at 590) (same), or penalties that were not determined to be civil. *See, e.g.*, *Cassidy v. Puett Elec. Starting Gate Corp.*, 182 F.2d 604, 608 (4th Cir. 1950) (district court ordered penalties "to punish those who have deliberately and without any reasonable excuse disobeyed [its] orders" (internal quotation marks omitted)).

[8]    "The general rule is that whether a contempt judgment survives the avoidance of an underlying order depends on the nature of the contempt decree. If the contempt is criminal it stands; if it is civil it falls." *LaTrobe Steel Co. v. United Steelworkers of Am., AFL-CIO*, 545 F.2d 1336, 1342, 1347–48 (3rd Cir. 1976) (Vacating coercive civil contempt order because "reversal of the underlying injunction indicates that the complainant never had a valid right which was enforceable against the defendant."); *see also e.g., McLean v. Cent. States, S. & S.*

This case is not distinguishable on the ground that the injunction has been set aside as the result of the PTO proceeding rather than a court judgment. In *Fresenius USA, Inc. v. Baxter International, Inc.*, we held that a non-final money judgment of damages for infringement must be set aside where the judgment rested on a patent claim that the PTO later cancelled. 721 F.3d 1330, 1344, 1347 (Fed. Cir. 2013).[9] We held that the cancellation of a patent requires that non-final judgments be set aside because the "cancelled claims [a]re void *ab initio,*" *id.* at 1346, relying on *Moffit v. Garr*, 66 U.S. 273, 283 (1861), where the Supreme Court held that "unless [the patent] exists, and is in force at the time of trial and judgment, the suits fail." *Id.* at 1345 (quoting *Moffit*, 66 U.S. at 283). Thus, the cancellation of the patent precluded the patent-ee from recovering damages in *Fresenius*. Similarly, here the civil contempt sanctions must be set aside.

This case does not require us to decide whether civil contempt sanctions would survive if the injunction had

---

*Areas Pen. Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985) (Ordering "reversal of the contempt order because [the appellant] has prevailed in overturning the [underlying] order on appeal."); *Scott and Fetzer Co. v. Dile*, 643 F.2d 670, 675 (9th Cir. 1981) (Remedial civil contempt judgment "must fall as a result of our decision invalidating the underlying injunction."); *ITT Comm. Dev. Corp. v. Barton*, 569 F.2d 1351, 1361 (5th Cir. 1978) (Vacating contempt orders because the underlying turn-over order "was invalid ab initio."); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962, 966 (6th Cir. 1976) (Concluding that "the remedial contempt order . . . falls with [the relevant provision] of the injunction.").

[9]   The Supreme Court denied the petition for *certiorari* on May 19, 2014. *Baxter, Int'l., Inc. v. Fresenius USA, Inc.*, 134 S. Ct. 2295 (2014).

been final at the time the district court imposed civil contempt sanctions.[10] The injunction here was not final even though claim 26 had been held infringed. We held in *Fresenius* that even if this court has rejected an invalidity defense to infringement, an "intervening decision invalidating the patents unquestionably applies" as long as "the judgment in [the present] litigation is not final." *Id.* at 1344; *see also Moffit*, 66 U.S. at 283 ("[P]ending suits fall with the surrender" of a patent "which, in judgment of law, extinguishes the patent."); *Mendenhall*, 26 F.3d at 1584 ("Because the Mendenhall patents are invalid, the plaintiffs cannot now enjoin or recover damages from these defendants."). In *Fresenius*, we had previously reviewed the district court's rulings on infringement and invalidity and remanded the case to the district court to determine the scope of damages and injunctive relief. 721 F.3d at 1333. When reviewing the judgment reached by the district court on remand, we held that the original district court judgment, while "final for purposes of appeal . . . was not sufficiently final to preclude application of the intervening judgment" that led to the cancellation of the patent. *Id.* at 1340. With respect to the determination of finality, we explained that "where the scope of relief remains to be determined, there is no final judgment binding the parties (or the court)." *Id.* at 1341. This rule follows from the Supreme Court's holding that "a

---

10    *See, e.g., Maggio v. Zeitz*, 333 U.S. 56, 68 (1948) (reviewing contempt order, but not underlying order requiring turnover of property because "the turnover proceeding is a separate one, and when completed and terminated in a final order, it becomes res judicata and not subject to collateral attack in the contempt proceedings"); *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370, 1374 (Fed. Cir. 2014) (holding defendant cannot raise invalidity as a defense to contempt when the underlying injunction is final and not on appeal).

final decree [is] one that finally adjudicates upon the entire merits, leaving nothing further to be done except the execution of it.'" *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922).

There is no question here that the district court's modified injunction was not final when the PTO cancelled claim 26. Our previous appeal did not affirm the injunction, rather it remanded the case to the district court, requiring it "to consider what changes are required to the terms of the injunction, consistent with this opinion." *ePlus I*, 700 F.3d at 512. Our decision necessitated changes to the injunction because of our reversal of the infringement findings under claims 28 and 29, and our conclusion that Configuration 2 was not infringing. On remand, the district court had to consider the scope of relief to which ePlus was entitled, which necessarily impacted what activities Lawson could undertake. The district court ordered the parties to file statements of position "respecting the effect, if any, of the decision of the Court of Appeals on the scope of the injunction previously entered." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, Order, (E.D.Va. Nov. 28, 2012), ECF No. 981. In light of those submissions, the court recognized that "it is appropriate to reassess the propriety and scope of an injunction, as directed by the United States Court of Appeals for the Federal Circuit." *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, Order 2, (E.D.Va. Mar. 12, 2013), ECF No. 1019.

On the remand (as on appeal), Lawson argued that our ruling required more than eliminating the reference to Configuration 2. Specifically, Lawson contended that it was necessary to alter the injunction as to sales of products. Lawson also asserted that the requisite *eBay* analysis for the injunction changed because Configurations 3 and 5 were used by a substantially smaller portion of its customer base than Configuration 2. The district court rejected Lawson's arguments and found that the only

change our mandate required was removing the provision of the injunction that referenced Configuration 2. Consequently, it issued an order modifying the injunction in this one respect. The court ordered that "[p]ursuant to the mandate of the United States Court of Appeals for the Federal Circuit . . . it is hereby ORDERED that the injunction . . . is modified by deleting from its scope the product . . . colloquially known as 'Configuration 2[.]" J.A. 1. Lawson appealed the modification on the ground that it was not sufficient or consistent with our mandate and did not make the required changes. Under these circumstances, as in *Fresenius*, the district court's order was not final. 721 F.3d at 1342–43. After the district court modified the injunction, Lawson appealed the modification under 28 U.S.C. § 1291(a)(1). That appeal was pending when the PTO cancelled the only claim at issue in the litigation.

ePlus asserts that Lawson viewed the injunction as final because it filed a Rule 60(b) motion asking the district court to modify or dissolve the modified injunction. The filing of a Rule 60(b) motion under such circumstances is not unusual. Filing a Rule 60(b) motion did not prevent Lawson from appealing the modified injunction in addition to appealing the denial of the Rule 60(b) motion. *See Stone v. I.N.S.*, 514 U.S. 386, 401 (1995) ("Either before or after filing his appeal, the litigant may also file a Rule 60(b) motion for relief with the district court. The denial of the [Rule 60(b)] motion is appealable as a separate final order, and if the original appeal is still pending . . . the court of appeals can consolidate the proceedings.").

We conclude that the compensatory award for the violation of the injunction must be set aside in light of the cancellation of claim 26. Given our disposition, we need not reach the question of whether Lawson's redesigned products are more than colorably different from the original accused products and whether the redesigned products infringe.

CONCLUSION

For the foregoing reasons, the district court's injunction and contempt orders are vacated. The case is remanded with instructions to dismiss.

**VACATED AND REMANDED**

# United States Court of Appeals
# for the Federal Circuit

---

**EPLUS, INC.,**
*Plaintiff-Appellee,*

**v.**

**LAWSON SOFTWARE, INC.,**
*Defendant-Appellant.*

---

2013-1506, -1587

---

Appeals from the United States District Court for the Eastern District of Virginia in No. 09-CV-0620, Senior Judge Robert E. Payne.

---

O'MALLEY, *Circuit Judge*, dissenting.

I agree that, once this Court affirmed the PTO's cancellation of claim 26 of the '683 patent, an ongoing injunction barring infringement of that patent could no longer stand and must be vacated prospectively. That conclusion comes easily; as the majority notes, even Appellant's counsel conceded the point during oral argument. Maj. Op. at 11. The more difficult question is whether Appellees are relieved of all penalties for having violated the

injunction during the four years it was in place before the PTO's cancellation was affirmed.[1]

On this second question, the majority concludes that "[t]his case does not require us to decide whether civil contempt sanctions would survive if the injunction had been final at the time the district court imposed civil contempt sanctions," Maj. Op. at 15-16, because, under *Fresenius USA, Inc. v. Baxter International, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013) ("*Fresenius II*"), cancellation of claims by the Patent and Trademark Office ("PTO") "requires that non-final judgments be set aside." Maj. Op. at 15. Because it finds the judgment in this case non-final, the majority—on the strength of *Fresenius II*—renders all aspects of the earlier judgment against Lawson, including the injunction premised thereon, a nullity. I respectfully dissent from that aspect of the majority's opinion because *Fresenius II* is distinguishable from, and I do not believe governs, the present appeal. I write separately, moreover, to note that, if we are bound by *Fresenius II* on these facts, I find *Fresenius II* even more troubling than I initially believed. *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 733 F.3d 1369, 1373-81 (Fed. Cir. 2013) (O'Malley, J., dissenting from denial of petition for rehearing en banc).

I

In *Fresenius II*, a panel of this court held that "cancellation of claims during reexamination would be binding in *concurrent* litigation," and, while "cancellation of a pa-

---

[1]    While Lawson contends it did not violate the district court's injunction, because the majority does not reach that question, neither do I. The current record contains a district court finding that Lawson did violate the injunction. The question I debate with the majority is whether we can reach the merits of that finding.

tent's claims cannot be used to reopen a final damages judgment ending a suit based on those claims," there can be "no final judgment binding the parties" "where the scope of relief remains to be determined." 721 F.3d at 1339, 1341 (emphasis added). The facts here are different than those before us in *Fresenius II*.

In the initial district court litigation between Fresenius and Baxter, Fresenius brought suit seeking a declaratory judgment that the claims of three patents were "invalid and not infringed by Fresenius's hemodialysis machines." *Fresenius USA, Inc. v. Baxter Int'l., Inc.*, 582 F.3d 1288, 1293 (Fed. Cir. 2009) ("*Fresenius I*"). The district court granted Baxter judgment as a matter of law, finding that the jury's obviousness verdict was not supported by substantial evidence. *Id.* After a separate jury trial on damages, the jury awarded Baxter over $14 million in pre-verdict damages. *Id.* at 1294. The district court issued a permanent injunction against Fresenius, but delayed implementation of the injunction to allow Fresenius time to develop a non-infringing machine. *Id.* In lieu of the immediate injunction, the district court ordered Fresenius to pay an on-going royalty for any infringing machines sold prior to the injunction taking effect. *Id.* Fresenius appealed the district court's grant of judgment as a matter of law regarding validity, the permanent injunction, the ongoing royalty award, and claim construction. *Id.* Fresenius, however, did not appeal the pre-verdict damages award, only the prospective royalties and injunction.

In *Fresenius I*, we reversed the district court's grant of judgment as a matter of law for all but six claims of one of Baxter's patents. *Id.* at 1304. For those six claims, we held that Fresenius failed to prove invalidity. *Id.* We remanded to the district court with the following instruction: "[W]e vacate the injunction and remand so that the court may revise or reconsider the injunction in light of the fact that only claims 26-31 of the '434 patent remain

valid and infringed. Finally, we vacate the royalty award entered by the district court and remand for further proceedings consistent with this opinion." *Id.*

On remand, Fresenius argued that no injunction should issue, the post-verdict ongoing royalty amount was unreasonable, and it should receive a "new trial for pre-verdict damages for infringement of the '434 patent." *Fresenius II*, 721 F.3d at 1333. The district court declined to enter an injunction as the relevant patent had expired, awarded Baxter new post-verdict damages at a reduced royalty, and denied Fresenius's motion for a new pre-verdict damages trial. *Id.* While Fresenius's second appeal was pending, we affirmed a decision of the PTO cancelling the remaining claims of the '434 patent in an ex parte reexamination proceeding. *In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1366 (Fed. Cir. 2012). The *Fresenius II* panel concluded that, because we *vacated* the injunction and the royalty award, and remanded for "further proceedings consistent with this opinion" in *Fresenius I*, 582 F.3d at 1304, the litigation was not final as we left the district court with more to do than simply "execute the judgment." *Fresenius II*, 721 F.3d at 1341. Because the "scope of relief remain[ed] to be determined," there was "no final judgment binding the parties," the reexamination "extinguishe[d] the underlying basis for suits based on the patent," and we vacated the pre-verdict damages award. *Id.* at 1341, 1344.

The facts of the present appeal differ markedly from those presented in *Fresenius II*. At trial in this case, the jury found that Configurations 1 and 4 were not infringing; Configurations 2, 3, and 5 infringed system claim 1 of the '172 patent; Configurations 3 and 5 infringed system claim 3 of the '683 patent and method claims 26, 28, and 29 of the '683 patent; and Lawson did not infringe the '516 patent. *ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09-cv-620, 2011 WL 2119410, at *4 (E.D. Va. May 23, 2011). The jury also concluded that none of the asserted claims

were invalid. *Id.* The district court entered a permanent injunction against Lawson, preventing Lawson from making, using, selling, or offering to sell, Configurations 2, 3, or 5. *Id.* at *19.[2] ePlus then initiated contempt proceedings against Lawson, arguing that the design-around RQC module was not more than colorably different from the infringing RSS module. *ePlus, Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d. 472, 475-76 (E.D. Va. 2013).

Lawson appealed the validity of the two system claims, the jury's infringement findings as to all claims, and the district court's entry of an injunction. *ePlus I*, 700 F.3d at 516-17. Importantly, Lawson *did not appeal* the validity determinations regarding claims 26, 28, and 29 of the '683 patent. We concluded that the system claims were invalid as indefinite, and reversed the district court's denial of judgment as a matter of law for noninfringement of claims 28 and 29 of the '683 patent. *Id.* at 523. We affirmed, however, the jury's finding of infringement of claim 26 of the '683 patent.[3] We returned

---

[2]    Prior to entering the injunction, the district court excluded ePlus's expert report regarding damages, and did not permit ePlus to present evidence of damages due to prior discovery sanctions. *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 515 (Fed. Cir. 2012) ("*ePlus I*"). Thus, ePlus's only available remedy was an injunction.

[3]    The majority claims that, in *ePlus I*, we upheld the finding of induced infringement of claim 26 based solely on "Lawson providing customer services," and not due to sales. Maj. Op. at 6. That is not accurate, as the language the majority omits from the same paragraph of *ePlus I* proves. Maj. Op. at 6 n.4. In *ePlus I*, we held that "there remains no serious dispute that Lawson's customers infringe claim 26." 700 F.3d at 520. After finding that Lawson *directly infringed* through its customer services,

the case to the district court with a very limited remand instruction: "We remand to the district court to consider what changes are required to the terms of the injunction, consistent with this opinion. In all other respects, we affirm." *Id.* Our remand instruction merely recognized the district court's inherent continuing equitable powers over the scope of its injunction. Importantly, neither our opinion nor our remand instruction vacated the injunction. The judgment that claim 26 was valid and infringed—one of the judgments upon which the injunction was predicated—remained intact, as did the injunction.

On remand, Lawson moved to modify or vacate the injunction under Federal Rule of Civil Procedure 60(b). The district court concluded that "the injunction must be modified so as to no longer apply to Configuration No. 2. The injunction shall remain in effect in all other respects." *ePlus, Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 459, 471 (E.D. Va. 2013) (also holding that aspects of the injunction related to Configuration Nos. 2 and 5 "remain undisturbed by the Federal Circuit decision"). Thus, the only modification necessary under our remand instruction "consistent with [our] opinion" was that Configuration 2 had to be removed from the scope of the injunction as claim 1 of the '172 patent, the sole basis for infringement

---

we held that "[f]inally, we have reviewed the record and are satisfied that it contains sufficient evidence of Lawson's intent and knowledge to allow a reasonable jury to conclude that Lawson induced its customers to infringe claim 26." *Id.* at 521. We also affirmed the district court's finding that there was sufficient evidence that Lawson was a contributory infringer. *Id.* at 523 n.2. We thus affirmed that Lawson induced infringement, in part, through "selling and offering to sell the infringing systems," without limiting our analysis to just the system claims. *See ePlus,* 2011 WL 3584313, at *4.

by Configuration 2, was held invalid. *Id.* Lawson never contended that the *number* of claims of the '683 patent that were infringed would or should impact the scope of the products enjoined, or even that the number of patents infringed by the same products was material to the nature of the injunctive relief. *Id.* at 466-70 (noting that Lawson sought to alter the scope of the injunction only on the basis that just method claims remained infringed after *ePlus I*, and "only 150 Lawson customers would be affected by the injunction"). Thus, while reference to Configuration 2 was removed from the injunction, the activities enjoined did not change. *Id.* at 471. Separately, the district court concluded that Lawson had been in contempt of the injunction since soon after it was entered, and awarded ePlus disgorgement of Lawson's profits. *ePlus, Inc. v. Lawson Software, Inc.*, 946 F. Supp. 2d 472, 489-93 (E.D. Va. 2013). Lawson appealed the district court's contempt order and ruling on the Rule 60(b) motion.

There are crucial differences between these facts and the facts in *Fresenius II*. First, Fresenius failed to appeal the pre-verdict damages judgment from the district court, but did appeal the validity of all relevant claims-at-issue. As the PTO's reexamination determination involved the validity of some of the claims-at-issue, Fresenius at least continued to press the validity of the patents in its first appeal. Further, while Fresenius did not directly appeal the pre-verdict damages award in *Fresenius I*, it did move for a new trial on damages on remand premised on the "further proceedings" language in our remand instruction, which it then appealed in *Fresenius II*. In the present appeal, Lawson never appealed the validity of claim 26 of the '683 patent and never sought to press the issue again, either before the trial court or this one. The judgment that claim 26 of the '683 patent was valid became final when the district court entered final judgment and Lawson chose not to appeal that judgment to this court.

While the PTO did find claim 26 of the '683 patent to be invalid through ex parte reexamination proceedings, and we affirmed that decision in *In re ePlus, Inc.*, 540 F. App'x 998 (Fed. Cir. 2013), the validity of claim 26 of the '683 patent as *between ePlus and Lawson* with regards to the continuing injunction (at least until the decision in *In re ePlus* mandated) was final well before that point in time. *See Function Media, L.L.C. v. Kappos*, 508 F. App'x 953, 956 (Fed. Cir. 2013) (holding that a party's failure to appeal from a district court's judgment of no invalidity barred that party from seeking reexamination of those claims); *Odectics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1275 (Fed. Cir. 1999) (holding that failure of a party to cross-appeal the issue of validity "preclud[ed] further consideration of the issue"); *cf. Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) (the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal"); *Bullen v. De Bretteville*, 239 F.3d 824, 829 (9th Cir. 1956), *overruled on other grounds, Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ("A case remanded for further hearing or over which jurisdiction is retained for some purposes may nonetheless be final as to other issues determined.").

Second, the remand instructions in *ePlus I* and *Fresenius I* were different in important, material respects. In *Fresenius I*, we vacated the injunction and the post-verdict royalty awards, instructed the district court to "revise or reconsider" the injunction, and remanded "for further proceedings consistent with this opinion." *Fresenius I*, 582 F.3d at 1304. By vacating the injunction, we required the district court to analyze the injunction anew. Further, in *Fresenius II* we found that, by remanding "for further proceedings consistent with this opinion," the district court was free to consider other aspects of the case, including Fresenius's motion for a new trial regarding pre-verdict damages. Here, we did not vacate the

injunction, which was the only form of remedy available to ePlus. By not vacating the injunction, the injunction remained in force and any on-going infringing activity by Lawson would be potential contemptible conduct. We did no more than suggest that the district court "consider" any necessary changes to the injunction, consistent with the district court's equitable powers; we did not direct the district court to "revise or reconsider" the injunction. Finally, we conspicuously did not remand for "any further proceedings consistent with this opinion." As the majority in *Fresenius II* recognized in distinguishing *Qualcomm, Inc. v. FCC*, 181 F.3d 1370, 1380 (D.C. Cir. 1999), the scope of the appellate remand instruction is crucial to the preclusive effect of an intervening PTO reexamination determination. *Fresenius II*, 721 F.3d at 1346 n.12.

The *Fresenius II* majority concluded that the remand instruction in *Qualcomm* was for "specific, immediate relief for a party," while it found the remand instruction in *Fresenius I* more open-ended—"for further proceedings." *Id.* The remand instruction in *ePlus I*, like that in *Qualcomm*, did contemplate "specific, immediate relief for a party"—Configuration 2 should be removed from the scope of the injunction, but the injunction remains in force subject only to the district court's continuing equitable power over it. And, the remand instruction in *ePlus I* noticeably does not include an order for the district court to undertake "further proceedings." *Fresenius I,* 582 F.3d at 1304. Thus, as the *Fresenius II* majority contemplated when attempting to distinguish the United States Court of Appeals for the District of Columbia's ("D.C. Circuit") apparently contrary ruling in *Qualcomm*, the more limited scope of the remand order from *ePlus I* differentiates the present appeal from that in *Fresenius II*.

Finally, the nature of the remedies at issue on appeal distinguishes the two cases. In *Fresenius II*, the majority determined that both pre-verdict and post-verdict damages would be vacated in light of the PTO reexamination

results because the scope of monetary remedies was not yet final. That is not the case here. As noted, I agree with the majority that the injunction should be vacated *prospectively* from the date when *In re ePlus* mandated, and that any coercive civil remedies should be vacated since it would be inappropriate to force Lawson to comply with an injunction that is no longer enforceable. As the majority correctly states, an injunction is a "continuing decree" that must not be enforced prospectively if the right underlying the decree is abrogated. Maj. Op. at 9-11 (quoting *Pennsylvania. v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 422 (1855)). I disagree, however, that the results of *In re ePlus* require that we vacate the compensatory civil contempt order.

Lawson's conduct giving rise to the contempt order occurred while the injunction, with regards to Configurations 3 and 5, was valid under *ePlus I*. While we remanded to allow the district court to use its inherent equitable powers to remove Configuration 2 from the scope of the injunction, we retained the jury's infringement finding with regards to claim 26 of the '683 patent, Lawson did not appeal the validity of claim 26, and we did not vacate the injunction. In a contempt proceeding, the putative contemnor may not challenge the correctness of the underlying order or attack the validity of the underlying basis for an injunction unless the court issuing the injunction had no jurisdiction to do so.[4] *Maggio v. Zeitz*,

---

[4] The cases the majority relied upon, such as *McLean v. Central States, S. & S. Areas Pension Fund*, 762 F.2d 1204 (4th Cir. 1985); *Scott & Fetzer Co. v. Dile*, 643 F.2d 670 (9th Cir. 1981); *ITT Committee Development Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978); *Blaylock v. Cheker Oil Co.*, 547 F.2d 962 (6th Cir. 1976); *LaTrobe Steel Co. v. United Steelworkers of America, AFL-CIO*, 545 F.2d 1336 (3d Cir. 1976); all involved both the underlying

333 U.S. 56, 68-69 (1948); *Proveris Scientific Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370 (Fed. Cir. 2014) ("'In a contempt proceeding to enforce [an] injunction . . ., the only available defense for anyone bound by the injunction was that the [newly accused product] did not infringe. . . . Validity and infringement by the original device were not open to challenge.'" (quoting *Additive Controls &*

---

injunction and the contempt order simultaneously on direct appeal. Here, Lawson failed to appeal the validity of claim 26 of the '683 patent, we affirmed the jury's finding of infringement on that patent, and we did not vacate the injunction. While a district court retains the equitable power to revise an injunction prospectively, we did not vacate the injunction, and the injunction was final at the time of the allegedly contemptible conduct.

The majority further relies on *Worden v. Searls*, 121 U.S. 14 (1887). Like the cases noted above, *Worden* involved an injunction and contempt order which were simultaneously on direct appeal. *Worden* stands for "the proposition that the right to fines for violation of a preliminary injunction is founded on that injunction which in turn is predicated on the validity of the patent." *Fresenius II*, 733 F.3d at 1376 n.5 (O'Malley, J., dissenting from denial of petition for rehearing en banc). *Worden* thus permits prospective challenges to an injunction and prevents a contempt finding predicated upon an injunction *after* the predicate for it no longer exits. *Id.* ("Thus, while the PTO's cancellation of the patent renders it prospectively invalid, the cancellation cannot render a prior *judgment* for damages invalid."). We affirmed the underlying injunction in *ePlus I*, rendering the injunction retrospectively final. Thus, because the contemptible conduct occurred before the PTO invalidated the patent upon which the retrospectively final injunction was predicated, it is not "curious" that *Worden* does not apply to these facts.

*Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1350 (Fed. Cir. 1998)). All that remained available for review in the current appeal was the prospective validity of the injunction and the propriety of findings made during the contempt proceeding, not the underlying basis for the injunction at issue in the contempt proceeding. Thus, the underlying basis of the contempt award, which is the only aspect of the contempt proceeding that could be influenced by the results of *In re ePlus*, was not at issue during the district court contempt proceedings, and is not at issue in this appeal.

For these reasons, I believe that the majority incorrectly holds that *Fresenius II* requires that we to vacate the compensatory contempt award in light of *In re ePlus*.[5]

## II

If the majority is correct that *Fresenius II* requires us to vacate the compensatory contempt award, even though Lawson failed to appeal the judgment finding claim 26 of the '683 patent valid and even though we did not vacate the injunction or remand for open-ended proceedings, then *Fresenius II* is even more concerning than I first believed. I continue to believe that we wrongly decided *Fresenius II*. As detailed in my dissent to the denial of the petition for rehearing en banc*, Fresenius II*, 733 F.3d at 1373-81 (O'Malley, J., dissenting from denial of petition for rehearing en banc), the majority in *Fresenius II* erroneously analyzed both the finality of the issues on appeal and the scope of our appellate remand instruction in *Fresenius I*. These arguments apply with even greater force and urgency here.

---

[5]    As noted, given the grounds for our decision here, I express no opinion on the merits of Lawson's objections to the contempt findings.

The majority's approach to finality will further displace the critical role of district courts in patent infringement suits. According to the majority, a decision of the PTO, an administrative agency under a coordinate branch of government, can displace a judgment of an Article III court. Validity of claim 26 became final when Lawson failed to appeal the issue in *ePlus I* and our disposition did not reopen the judgment for any further proceedings regarding the validity of any of the claims-at-issue, nor did it leave the remedy open in the sense *Fresenius II* said *Fresenius I* did. By extending *Fresenius II* to these materially different circumstances, the majority assumes that *any* determination made during an infringement case, even if that specific issue is never appealed, can be nullified by the action of an administrative agency as long as anything—even a fully discretionary "consideration" of an intact remedy—remains available. The majority's approach essentially allows an executive agency action to render both the panel opinion in *ePlus I* and the district court's judgment regarding validity advisory opinions. That result ignores the role of Article III courts in our constitutional structure. *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 411 (1792) (Chief Justice Jay and Justice Cushing writing, in an opinion for the Circuit Court for the District of New York, that the executive branch may not "sit as a court of errors on the judicial acts or opinions" of the federal courts); *Qualcomm*, 181 F.3d at 1379-80 (discussing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 240 (1995), and the protection granted to final judgments of Article III courts from invalidation by coordinate branch activity under the separation of powers doctrine).

The majority's approach is contrary to the well-established law of finality when the merits of an issue are conclusively decided. *Fresenius II*, 733 F.3d at 1375-77 (O'Malley, J., dissenting from denial of petition for rehearing en banc). And, that decision further deepens the circuit split between our court's approach to finality and

that of our sister circuits, as identified by Judge Newman in her dissent in *Fresenius II*. 721 F.3d at 1355-59 (Newman, J., dissenting). While it is true that a district court, in its equitable powers, retains the ability to alter the scope of an injunction prospectively, the district court here lacked the power to vacate the merits underlying our finding of infringement once the Supreme Court denied certiorari after *ePlus I*. Even further, *we* lacked the power in *ePlus I* to alter the jury's finding regarding the validity of claim 26 of the '683 patent because Lawson did not appeal that issue. The majority, nevertheless, breaks away from well-established notions of finality to hold that the jury's final determination that claim 26 was not invalid—a judgment justifying the injunction that led to the compensatory civil contempt order—must be vacated in light of a later determination by an executive agency.

The majority opinion also creates uncertainty for any future compensatory contempt awards due to the unique nature of injunctions, a point not contemplated in *Fresenius II*. District courts always retain the equitable power to revise injunctions prospectively in light of changed circumstance. Does this mean that, where an injunction is entered, the "scope of relief remains to be determined" in perpetuity? Maj. Op. at 16. Even if we had affirmed all grounds in *ePlus I* and did not remand, Lawson could still have filed a Rule 60(b) motion and argued that, as long as the contempt proceedings were on appeal the "scope of relief remains to be determined" under the district court's continuing power over the injunction. Would we have to vacate every civil contempt award where a later PTO decision invalidates the patent at issue in those contempt proceedings?[6]

---

[6] Indeed, parties have begun reading *Fresenius II* broadly, arguing that the policies and rationales underlying that decision justify reopening even admittedly final

The majority decision today exacerbates the circuit split between the Federal Circuit and the D.C. Circuit. As noted, the *Fresenius II* majority distinguished *Qualcomm* by arguing that the D.C. Circuit ordered "specific" relief on remand, while our order for remand in *Fresenius I* was not sufficiently specific. *Fresenius II*, 721 F.3d at 1346 n.12. Here, our remand order was significantly more specific than in *Fresenius II*—only allowing the district court to alter the scope of the injunction within its inherent equitable powers, but not permitting the district court to upset the final determinations on the merits or allowing the district court to undertake further proceedings. The majority here argues, however, that *Fresenius II* applies, despite our more specific remand instruction in *ePlus I*. It appears that no remand instruction would ever be specific enough to protect the integrity of an Article III court's judgment as long as any "remand" occurs. That view strains concepts of finality beyond all recognition.

Finally, as I noted in my dissent from denial of rehearing en banc in *Fresenius II*, 733 F.3d at 1380-81 (O'Malley, J., dissenting from denial of petition for rehearing en banc), the view of finality we espouse in these two cases is a view of finality which is wildly divergent from that employed by this very court in other contexts. In *Robert Bosch, LLC v. Plyon Manufacturing Corp.*, 719 F.3d 1305 (Fed. Cir. 2013) (en banc), this court held, en

---

judgments to give effect to later PTO decisions. *See, e.g.*, *Versata Software, Inc. v. SAP Am., Inc.*, No. 2:07-cv-153-RSP, 2014 WL 1600327, at *2 (E.D. Tex. Apr. 21, 2014) (dismissing infringer's argument that its Rule 60(b)(6) motion to reopen a final judgment of validity should be granted in light of a later Board determination of invalidity), *aff'd sub nom. Versata Computer Indus. Solution v. SAP Am., Inc.*, No. 14-1430, 2014 WL 2765230 (Fed. Cir. June 18, 2014) (per curiam).

banc, that liability determinations in patent cases are final for purposes of immediate appeal under 28 U.S.C. § 1292(c), even when a jury trial on damages and willfulness remains. *See id.* at 1316, 1319-20. There, we concluded that damages and willfulness determinations are sufficiently "ministerial" to constitute no more than an "accounting" within the meaning of § 1292(c), thus rendering the liability determination a "final" judgment for purposes of appeal.

Despite the very liberal view of finality we employed in that context, we continue to declare that we must employ the stingiest view of that concept when deciding at what point parties may rely on litigated determinations of their rights. This chasm between the sweeping rule laid down both in *Fresenius II* and here and the one the court established in *Bosch* is confusing. Notably, finality often may be applied *less* strictly for preclusion purposes than for purposes of appeal, *not more so. See Miller Brewing Co. v. Joseph Schlitz Brewing Co.,* 605 F.2d 990, 996 (7th Cir. 1979) ( "To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment. 'Finality' in the sense of 28 U.S.C. § 1291 is not required."); *see also Syverson v. Int'l Bus. Mach. Corp.,* 472 F.3d 1072, 1079 (9th Cir. 2007); *Henglein v. Colt Indus. Operating Corp.,* 260 F.3d 201, 209–10 (3d Cir. 2001) ("[W]e commented that finality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts."); *Swentek v. USAIR, Inc.,* 830 F.2d 552, 561 (4th Cir. 1987), *abrogated on other grounds, Mikels v. City of Durham, N.C.,* 183 F.3d 323 (4th Cir. 1999) ("Finality for purposes of collateral estoppel is a flexible concept. . . . "); *Pye v. Dep't of Transp. of Georgia,* 513 F.2d 290, 292 (5th Cir. 1975) ("To be final a judgment does not have to dispose of all matters involved in a proceeding."); *Zdanok v. Glidden Co.,* 327 F.2d 944, 955 (2d Cir. 1964). Thus, it would seem that our jurisprudence should be the *reverse* of what it has become.

I see no way to reconcile the liberal view of finality for appeal purposes we adopted in *Bosch* with today's view that finality almost never exists for preclusion purposes. I dissent from the majority's decision. I would proceed to consider the merits of Lawson's appeal from the trial court's civil contempt findings.